**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

 Plaintiff-Appellee,

v.                                                      No. 06-1222

CARLOS VALENZUELA,

 Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 05-CR-00463-LTB)**

---

Martha A. Paluch, Assistant Unites States Attorney (Troy A. Eid, United States Attorney with her on the brief), Denver, Colorado, for Plaintiff-Appellee.

Lynn C. Hartfield, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender with her on the brief), Denver, Colorado, for Defendant-Appellant.

---

Before **MCCONNELL, BALDOCK,** and **TYMKOVICH**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

After a Greeley, Colorado police officer discovered a sawed-off shotgun in Defendant's vehicle during a traffic stop, a grand jury indicted Defendant on one count of possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861. Defendant moved to suppress the shotgun. According to Defendant, the officer did not have reasonable suspicion to stop his vehicle, or, in the alternative, the officer unreasonably prolonged the traffic stop by asking him questions outside the scope of the traffic violation. The district court concluded the officer acted reasonably throughout the course of the stop and denied Defendant's motion to suppress. Defendant subsequently entered a conditional guilty plea, reserving the right to appeal the district court's order. See Fed. R. Crim. P. 11(a)(2). Defendant now appeals. We have jurisdiction pursuant to 28 U.S.C.§ 1291. We review the district court's reasonableness determination de novo, see United States v. Rice, 483 F.3d 1079, 1082 (10th Cir. 2007), and affirm.

I.

The parties stipulated to the all of the following facts: On October 8, 2005, at approximately 11:59 p.m., Detective Shad Baxter of the Greeley, Colorado Police Department observed a Lincoln Town Car traveling westbound in the left through lane, directly ahead of his patrol car. Baxter watched as the Lincoln crossed the white painted lane divider into the right westbound through lane. The Lincoln drifted approximately three to four feet into the right lane, and continued in this manner for several seconds before pulling back into the left lane. The driver of the

2

Lincoln displayed no signal before crossing into the right lane or back into the left lane.

Detective Baxter activated his emergency lights. Defendant pulled over and stopped the Lincoln next to the curb. Detective Baxter walked to the driver's side window. Inside the vehicle he saw four young males. Detective Baxter told Defendant why he had stopped him, and asked him for his driver's license, registration, and proof of insurance. Defendant informed Detective Baxter he did not have his driver's license with him but identified himself by name. Defendant then handed Detective Baxter a plastic sleeve with registration and insurance information for the Lincoln.

Detective Baxter asked Defendant whether he would be willing to get out of the car and speak with him. Defendant agreed, got out of the car, and walked with Baxter to the rear of the Lincoln. Very shortly into their conversation, Detective Baxter asked Defendant whether he or any of the others in the car had any type of weapons or illegal items. Defendant answered by saying "not that I know of," or words to that effect. Detective Baxter then asked whether it would be "O.K." to search the vehicle for weapons or any other illegal items. Defendant answered this question by telling the detective a shotgun was in the back seat area. Detective Baxter promptly handcuffed Defendant and placed him in the backseat of another officer's patrol car which had recently arrived as backup. To ensure everyone's safety, the detective removed the remaining occupants from the car and handcuffed

3

them as well.

Detective Baxter then looked into the Lincoln through the rear window of the driver's side. On the floorboard behind the driver's seat, the detective could see the butt stock of a sawed-off shotgun, which was partially wrapped in a white t-shirt. The firearm was situated so that the barrel-end of the shotgun was pointing toward the front of the car, under the driver's seat. Detective Baxter retrieved the shotgun and the indictment followed.

II.

A traffic stop is a seizure for Fourth Amendment purposes, the propriety of which we measure under the standards set forth in Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). We consider the detention as a whole, "and the touchstone of our inquiry is reasonableness." United States v. Patterson, 472 F.3d 767, 776 (10th Cir. 2006). We conduct a two-step inquiry when determining the constitutionality of a traffic stop. First we ask whether the officer's action was justified at its inception. If so, we then ask whether the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place. See United States v. Tibbetts, 396 F.3d 1132, 1136 (10th Cir. 2005). "The validity of a traffic stop under the Fourth Amendment turns on whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." Id. at 1137 (internal quotations omitted). The

4

government bears the burden of proving the reasonableness of the officer's suspicion. United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998). The detention arising from a traffic stop does not become unreasonable merely because the officer asks questions unrelated to the initial purpose for the stop, provided those questions do not unreasonably extend the amount of time the subject is delayed. See United States v. Alcaraz-Arellano, 441 F.3d 1252, 1259 (10th Cir. 2006) (citations omitted).

## A.

Defendant first argues Detective Baxter did not have reasonable suspicion to stop his vehicle. As noted above, Detective Baxter stopped Defendant's car because Defendant, without signaling, crossed three or four feet into the right westbound lane and stayed in that position for several seconds before crossing back into the left westbound lane. Detective Baxter believed Defendant's actions violated Colo. Rev. Stat. § 42-4-1007(1)(a), which provides "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

Relying on United States v. Gregory, 79 F.3d 973 (10th Cir. 1996), Defendant argues his several second drift into the right lane did not justify Detective Baxter's stop. In Gregory, we interpreted a Utah statute very similar to Colo. Rev. Stat. § 42-4-1007(1)(a) and held, under the circumstances of that case, a driver's brief drift outside his lane of traffic into an emergency lane did not amount to a violation of

5

Utah law sufficient to effectuate a traffic stop.[1]  Id. at 978.  Since that time, our cases have clarified that Gregory does not "stand[] for the proposition that a single instance of drifting onto the shoulder can never be a violation of a traffic statute like section [41-6-61(1)]."  United States v. Cline, 349 F.3d 1276, 1287 (10th Cir. 2003).  Rather, we must analyze objectively all the surrounding facts and circumstances to determine whether the officer had reasonable suspicion that a violation of the applicable statute had occurred.  See United States v. Ozbirn, 189 F.3d 1194, 1198 (10th Cir. 1999).

Defendant asserts this case falls "squarely within the bounds of Gregory."  We disagree.  Several facts distinguish this case from Gregory.  First, in Gregory, the defendant was traveling in a moving truck where the road was winding, the terrain was mountainous and the weather condition was windy.  Gregory, 79 F.3d at 975.  As we explained:  "Under these conditions any vehicle could be subject to an isolated incident of moving into the right shoulder of the roadway, without giving rise to suspicion of criminal activity."  Id.  In this case, nothing in the record suggests any outside factors contributed to Defendant's lane drift.  See United States v. Alvarado, 430 F.3d 1305, 1309 (10th Cir. 2005) (noting the lack of any objective factor which might have made it impractical for the defendant to remain in a single

---

[1]  The Utah statute at issue in Gregory, Utah Code Ann. § 41-6-61(1), required that a vehicle be operated "as nearly as practical entirely within a single lane . . . ."

lane). Instead, the record is clear Defendant was traveling along a four-lane city street.

Additionally, the movement of the vehicle in Gregory occurred toward the right shoulder of the road, so other traffic was in no danger of collision. In this case, Defendant moved his vehicle three to four feet into another lane of traffic, essentially straddling the lane divider for several seconds. This movement is more significant than the brief two-feet lane drift under windy conditions described in Gregory. See Gregory, 79 F.3d at 975-76. Detective Baxter could have reasonably believed Defendant's actions in this case posed a serious risk of collision. Accordingly, we conclude Detective Baxter had reasonable suspicion to believe Defendant violated the Colorado Traffic Code, thus justifying the initial stop of Defendant's vehicle. See id. (upholding the district court's denial of a motion to suppress where the defendant drifted approximately one foot out of his lane for several seconds).

B.

Defendant also argues Detective Baxter's questioning regarding the presence of weapons "or other illegal items" and his request to search Defendant's vehicle unreasonably extended the detention in violation of his Fourth Amendment rights. We begin our analysis of Defendant's alternative argument with Detective Baxter's first question: "Do you have any weapons or other illegal items in your vehicle?" For several years the rule in this circuit has been police officers are free to question individuals regarding the presence of weapons. See United States v. Holt, 264 F.3d

7

1215 (10th Cir. 2001) (en banc). The justification for this rule is rooted in officer safety. See id. at 1226 (noting "the government's interest in officer safety outweighs a motorist's interest in not being asked about the presence of loaded weapons."). Thus, the first part of Detective Baxter's question regarding the presence of weapons was permissible, if not advisable.

Recent precedent informs us that the second portion of Detective Baxter's first question, i.e., whether "other illegal items" were in the car, was also permissible. In Alcaraz-Arellano, we ruled that officers may ask questions outside the scope of the traffic stop so long as the questions do not appreciably prolong the length of the stop. See Alcaraz-Arellano, 441 F.3d at 1259. Defendant argues Detective Baxter's questioning prolonged the length of the stop because Detective Baxter allegedly abandoned investigation of the traffic offense and immediately asked Defendant questions unrelated to the traffic infraction. In other words, according to Defendant, Detective Baxter was only permitted to ask questions unrelated to the traffic stop while he was writing out a ticket, waiting for dispatch, or conducting some other investigative procedure related to the initial purpose of the stop.

We do not believe our precedent requires such a narrow approach. Our cases do not focus on the order of events. Rather, our cases focus on the reasonableness of the traffic stop in light of both the length of the detention and the manner in which it was carried out. See id. at 1258. In this case, Detective Baxter's question regarding the presence of other "illegal items" did not appreciably lengthen the

8

duration of the stop. The officer's inquiry required a simple yes or no answer and could not have taken more than two or three seconds to ask. That Detective Baxter did not ask the question while actively processing Defendant's traffic infraction does not render Defendant's momentary detention unreasonable.

Detective Baxter's second question, "may I search," also did not violate Defendant's Fourth Amendment rights. Again, the key inquiry is whether Defendant's detention was reasonable. Patterson, 472 F.3d at 776. Detective Baxter asked for consent to search the vehicle as a follow-up question to his original question regarding the presence of weapons or other illegal items in the vehicle. Because Defendant answered the first question with the equivocal response of "not that I know of," and because the possible presence of weapons in the vehicle posed an immediate danger, Detective Baxter reasonably asked whether he could search the vehicle. Indeed, Defendant's equivocal response to Detective Baxter's first question engenders the notion that weapons may be in the vehicle but Defendant does not necessarily know of any.

We have repeatedly pointed out the Government's strong interest in officer safety. As we noted in Holt, 264 F.3d at 1221, a motorist expects an officer to take "reasonable measures to protect officer safety during [a traffic stop]." In Holt, we outlined the risk of danger faced by police officers conducting traffic stops and noted because of this risk, officers are given "wide latitude to discern the threat [a] motorist may pose to officer safety." Id. at 1223 (citations and quotations omitted).

9

Given Defendant's answer to Detective Baxter's first question and the importance of officer safety, Detective Baxter's request to search the vehicle for weapons undoubtedly was reasonable.

The line of cases Defendant cites in his brief concerning an officer's request for consent to search a vehicle before the officer returns the driver's license, registration, and insurance information does not alter the outcome of this case. See e.g., United States v. Guerrero-Espinoza, 462 F.3d 1302, 1309 (10th Cir. 2006). These cases simply stand for the proposition that during a "routine traffic stop, an officer's retention of a defendant's documents is significant because it indicates that the defendant, as a general rule, did not reasonably feel free to terminate the encounter and, therefore, the government cannot rely on the defendant's consent to justify further detention, questioning, or a search." Id. (citations and quotations omitted). The validity of Defendant's consent to search is not at issue in this case.[2]

AFFIRMED.

---

[2] As a final note, we point out that the fact Detective Baxter asked for consent to search the car instead of some other question is irrelevant. Alcaraz-Arellano makes clear that the content of an officer's questions is unimportant so long as the questions do not unreasonably delay the stop. We could not have been more clear when we held that questioning "regardless of the topic" does not violate the Fourth Amendment so long as it does not prolong the detention. Alcaraz-Arellano, 441 F.3d at 1259.

10