FILED
United States Court of Appeals
Tenth Circuit

September 12, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

TERRY GENE DECKER,

  Defendant - Appellant.

No. 07-6302

(W.D. Oklahoma)

(D.C. No. 5:07-CR-00121-L)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **ANDERSON**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant Terry Gene Decker pled not guilty to one count of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). He filed a motion to suppress the firearms and ammunition obtained

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

in the course of a traffic stop. The district court denied Decker's motion to suppress, and he proceeded to a one-day jury trial, where he was found guilty. The district court then sentenced Decker to the statutory minimum of fifteen years' imprisonment. Decker appeals.

## BACKGROUND

In the early morning hours of August 25, 2006, Oklahoma City Police Officer Keegan Burris, while on routine patrol in a high-crime area of Oklahoma City, saw a car with an unreadable license plate.[1] The officer stopped the car, which Decker was driving and in which a female was a passenger. The officer asked both Decker and the female passenger for identification. When he ran a warrant check on their identifications, Officer Burris discovered that the passenger had given him a false name. It turned out that Decker, going under the name Terry Gene Burns, had a prior burglary conviction.

When Burris returned to the car to obtain the passenger's proper identification, he noticed something in Decker's mouth. In the officer's experience, suspects commonly destroy or conceal contraband by putting it in their mouths. Officer Burris accordingly asked Decker what was in his mouth. Decker responded by spitting a piece of gum onto his hand and throwing it out the

---

[1]Apparently, the tag light was out and there was a brown film obscuring the license plate, rendering the plate unreadable from fifty feet away. Oklahoma law requires a tag to be visible from that distance.

window. The officer then told Decker he had just littered. As Decker got out of the car to obtain the gum, Burris noticed two rifles, partially wrapped in blankets, behind Decker's car seat.

Because Officer Burris was alone, in a high-crime area in the middle of the night, and was faced with a passenger who had just lied about her identity, the officer handcuffed Decker and frisked him for weapons. During the frisk, the officer asked Decker for permission to "go inside" his pockets. Tr. of Mot. to Suppress at 10, R. Vol. 2. Decker granted him permission to search his pockets, where Officer Burris found nine .22-caliber rounds of ammunition in Decker's right front pocket. Upon rechecking Decker's record to see if he had any prior felony convictions, Officer Burris discovered he had a prior felony conviction for burglary. Burris then arrested Decker for being in possession of a firearm after being convicted of a felony. By this time, back-up personnel had arrived at the scene.

As indicated above, Decker filed a motion to suppress the firearms and weapons found in his car. He argued that the traffic stop was invalid at its inception because no traffic or equipment violation had occurred, that there was no additional indicia of criminal activity to justify the continued detention and search of the vehicle, and that the scope of the detention exceeded the justification for the stop in the first place. The United States responded to the motion, and the district court held an evidentiary hearing. The court denied

Decker's motion to suppress, finding: (1) "the totality of the evidence supports a finding that at the time of the traffic stop, the license plate was not clearly visible and Officer Burris could not clearly read the license plate" so "the initial stop of the vehicle, based on the observed traffic violation, was lawful," Order at 4, R. Vol. 1, tab 21; (2) the officer's "actions upon seeing the weapons in plain view once the defendant voluntarily exited the vehicle were reasonable and justified," id.; and (3) "the uncontradicted evidence indicated that the search of defendant's pockets by Officer Burris happened after defendant gave his permission to have his pockets searched." Id. at 4-5.

Following his conviction by the jury, the United States Probation Office prepared a presentence report ("PSR") in preparation for Decker's sentencing pursuant to the advisory United States Sentencing Commission, Sentencing Manual ("USSG") (2006). The PSR calculated Decker's initial base offense level was 24, but increased it to 33 because Decker's prior criminal convictions rendered him an armed career criminal under USSG §4B1.4. With a criminal history category of V, the advisory Guideline sentencing range was 210 to 262 months. The statute pursuant to which Decker was convicted, however, contains a statutory minimum of fifteen years' imprisonment. 18 U.S.C. § 924(e)(1).

Decker filed a sentencing memorandum and a motion for a downward variance, arguing that various factors under 18 U.S.C. § 3553(a) counsel in favor of a sentence lower than the advisory Guideline range. After considering the

§ 3553(a) factors, the parties' arguments, and the advisory Guideline range, the court sentenced Decker to 180 months, a downward variance from the Guideline sentencing range. Decker appeals, arguing that "Officer Burris, while conducting a routine traffic stop, exceeded the reasonable scope of the stop by asking Mr. Decker about his possession of contraband and by questioning the passenger and Mr. Decker regarding the identity of the passenger in the vehicle, both unrelated to the purpose of the traffic stop, and thereby violated Mr. Decker's rights under the Fourth Amendment." Appellant's Br. at 6.

## DISCUSSION

We have recently summarized the law in our circuit regarding traffic stops:

A traffic stop is a seizure for Fourth Amendment purposes, the propriety of which we measure under the standards set forth in Terry v. Ohio, 392 U.S. 1 (1968). We consider the detention as a whole, and the touchstone of our inquiry is reasonableness. We conduct a two-step inquiry when determining the constitutionality of a traffic stop. First we ask whether the officer's action was justified at its inception. If so, we then ask whether the resulting detention was reasonably related in scope to the circumstances that justified the stop in the first place. The validity of a traffic stop under the Fourth Amendment turns on whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment laws of the jurisdiction. The government bears the burden of proving the reasonableness of the officer's suspicion. The detention arising from a traffic stop does not become unreasonable merely because the officer asks questions unrelated to the initial purpose for the stop, provided those questions do not unreasonably extend the amount of time the subject is delayed.

United States v. Valenzuela, 494 F.3d 886, 888 (10th Cir. 2007) (further citations and quotations omitted). As particularly relevant to this case and Decker's appeal, we reiterate that in United States v. Alcaraz-Arellano, 441 F.3d 1252, 1259 (10th Cir. 2006), we held that officers may ask questions outside the scope of the traffic stop, provided those questions do not appreciably prolong the length of the stop. Moreover, our cases "do not focus on the order of events. Rather, our cases focus on the reasonableness of the traffic stop in light of both the length of the detention and the manner in which it was carried out." Valenzuela, 494 F.3d at 890.

Under our precedents, Officer Burris's lawful stop of Decker's car because Decker's license plate was difficult to see, the officer's questioning about the identities of Decker and his passenger, and the officer's inquiry about the substance in Decker's mouth, followed by his observation of the firearms in plain view and his consensual search of Decker's pockets, are all lawful. The district court correctly denied Decker's motion to suppress.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the denial of the motion to suppress.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge