The Supreme Court of the State of Colorado 
2 East 14th Avenue • Denver, Colorado 80203

2016 CO 16

Supreme Court Case No. 15SA286 
Interlocutory Appeal from the District Court 
Morgan County District Court Case No. 14CR245
Honorable Douglas R. Vannoy, Judge

Plaintiff–Appellant: 
The People of the State of Colorado,
v.
Defendant–Appellee: 
Amadeo Chavez-Barragan.

Order Reversed 
en banc
February 29, 2016

Attorneys for Plaintiff–Appellant:
Brittny B. Lewton, District Attorney, Thirteenth Judicial District
Robert C. James, Deputy District Attorney
Fort Morgan, Colorado
Attorney for Defendant–Appellee: 
Frank E. Moya
Denver, Colorado

JUSTICE HOOD delivered the Opinion of the Court.

¶1          Amadeo Chavez-Barragan is charged with possessing methamphetamine with intent to distribute. After the trial court granted his suppression motion, the People filed this interlocutory appeal. Because we conclude reasonable suspicion supported the initial stop, we reverse the trial court’s order and remand for further proceedings.
I. Facts and Procedural History[1]
¶2          In October 2014, Colorado and federal law enforcement officials were investigating an individual they suspected of distributing drugs. Chavez-Barragan’s ties to this target brought him similar scrutiny. Agents observed them together over a morning and early afternoon, but the two split up later in the day at a service station in Denver. Chavez-Barragan left the service station driving a semi-truck, and law enforcement followed him as he headed east on I-76.
¶3          vAround 2:30 a.m., Drug Enforcement Administration agent Sara McCaslin radioed Morgan County Deputy Shawna Ponce, who was on patrol in nearby Brush. McCaslin described the rig she was following and explained she thought it might contain drugs or maybe cash. However, in her own estimation, she did not have “probable cause” to stop Chavez-Barragan to investigate her drug suspicions, so she asked Officer Ponce to follow the truck and try to develop a basis for a traffic stop.
¶4          In her marked patrol car, Officer Ponce merged onto the highway behind the truck. Construction on this section of the interstate had closed certain lanes. A row of pylons formed a makeshift center line, and a row of barrels stood along the shoulder. 

¶5          Almost immediately after merging, Officer Ponce observed the trailer “riding” the white fog line that separates the right lane from the shoulder. She then saw the tires of the trailer cross over the line by less than a foot. This happened twice. Officer Ponce believed she had observed a lane violation under section 42-4-1007(1)(a), C.R.S. (2015), but she did not immediately stop the truck. Instead, she followed it another five or six miles through the rest of the construction zone until reaching a place where it was safe to stop. Over that span, she did not witness any other infractions.
¶6          When the vehicles cleared the construction zone, Officer Ponce switched on her overhead lights. Chavez-Barragan pulled over, and a subsequent search of the truck’s engine compartment revealed methamphetamine. Chavez-Barragan then made incriminating statements.
¶7          The People filed a criminal complaint, alleging possession with intent to distribute under section 18-18-405, C.R.S. (2015), and Chavez-Barragan filed motions to suppress the drugs and his statements. At an evidentiary hearing, the People first argued that there were sufficient grounds to stop Chavez-Barragan to investigate a drug offense, but the trial court rejected that argument, and the People do not advance it here. The People also argued that the initial stop was justified because Chavez-Barragan committed a traffic violation. The trial court spurned this argument as well, concluding, with guidance from several federal cases, that the truck’s “momentary, isolated, and minimal” encroachments over the fog line in an unlit construction zone at night did not provide sufficient grounds for a traffic stop. The court granted Chavez-Barragan’s motions to suppress, and the People filed this interlocutory appeal pursuant to section 16-12-102(2), C.R.S. (2015), and C.A.R. 4.1.[2]

II. Analysis
¶8          We first set forth the standard of review and relevant Fourth Amendment principles. Next, we interpret the traffic law at issue and conclude that it does not establish a bright-line rule. Instead, section 42-4-1007(1)(a) requires a vehicle to be driven in one lane “as nearly as practicable.” Therefore, any assessment of whether the statute was violated, and thus whether there was at least a reasonable suspicion to stop the driver, requires consideration of all the circumstances. Applying this analysis to the trial court’s factual findings, we conclude that an objectively reasonable suspicion supported the stop of Chavez-Barragan. As a result, we reverse the trial court’s order.
A. Standard of Review
¶9          On appeal, a trial court’s order suppressing evidence obtained in violation of constitutional protections presents mixed questions of law and fact. People v.  Munoz-Gutierrez, 2015 CO 9, ¶ 14, 342 P.3d 439, 443. We accept the trial court’s findings of historic fact if those findings are supported by competent evidence, but we assess the legal significance of the facts de novo. Id. Ultimately, we determine whether a seizure was reasonable. See People v. Kluhsman, 980 P.2d 529, 534 (Colo. 1999). Related issues of statutory construction we review de novo. Munoz-Gutierrez, ¶ 14, 342 P.3d at 443. 

B. Seizures for Traffic Violations
¶10          Traffic stops implicate federal and state constitutional protections against unreasonable seizure. See U.S. Const. amends. IV, XIV; Colo. Const. art. II, § 7; People v. Rodriguez, 945 P.2d 1351, 1359 (Colo. 1997); see also Delaware v. Prouse, 440 U.S. 648, 653 (1979). But a brief, investigatory seizure is justifiable when the officer has a reasonable, articulable suspicion that criminal activity “has occurred, is taking place, or is about to take place.” People v. Ingram, 984 P.2d 597, 603 (Colo. 1999). Suspicion of even a minor traffic offense can provide the basis for a stop.
¶11          In Whren v. United States, 517 U.S. 806, 810 (1996), the U.S. Supreme Court rejected a test that asked “whether a police officer, acting reasonably, would have made the stop for the reason given.” Similarly, we have remarked, “[A]n officer’s subjective motives for stopping a driver are irrelevant in determining whether an officer had reasonable suspicion.” People v. Vaughn, 2014 CO 71, ¶ 11, 334 P.3d 226, 229 (citing People v. Vissarriagas, 2012 CO 48, ¶ 9, 278 P.3d 915, 917–18). Thus, an officer with “an objectively reasonable basis to believe that a driver has committed a traffic offense” is justified in making a stop. Id.
¶12          Of course, to suspect criminal activity is to suspect a violation of a law. Whether an officer’s suspicion is reasonable thus depends on the meaning and scope of the underlying prohibition. Therefore, assessments of probable cause or reasonable suspicion require an initial interpretation of the statute allegedly violated. See, e.g., People v. Thornton, 929 P.2d 729, 731–32, 735 (Colo. 1996) (holding that, under the proper construction of the escape statute, probable cause existed to believe the defendant was “in custody” before fleeing); People v. Hrapski, 658 P.2d 1367, 1368–69 (Colo. 1983) (concluding there was no probable cause to believe the defendant violated the contraband statute because the non-firing bullet he possessed was not a “dangerous instrument” under the law).

¶13          Here, the parties advance opposing interpretations of the pertinent traffic law. Before we can answer whether Chavez-Barragan’s driving measured up, we must know what the statute requires his driving to be measured by. Only then can we determine whether Officer Ponce had a reasonable suspicion that Chavez-Barragan committed a violation. We therefore turn to the statute.
C. Section 42-4-1007(1)(a)
¶14          The critical traffic provision in this case provides in relevant part:
(1) Whenever any roadway has been divided into two or more clearly marked lanes for traffic . . .
(a) A vehicle shall be driven as nearly as practicable entirely within a  single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
§ 42-4-1007(1)(a) (emphasis added).[3]
¶15          Chavez-Barragan points out that the law’s command is not absolute; it merely requires that a driver stay in his lane “as nearly as practicable.” He argues that, under the circumstances, he complied and that the trial court was right to conclude Officer Ponce lacked a reasonable, articulable suspicion to stop him.

¶16          The People contend our caselaw conclusively establishes that “a driver whose vehicle touches the white fog line a single time is guilty of violating” the statute. They assert the trial court disregarded binding precedent, namely People v. Ramos, 13 P.3d 295 (Colo. 2000), and wrongly looked to federal caselaw for guidance.
¶17          Ramosis not up to the task the People assign it here. While it was another interlocutory appeal involving a truck stopped for weaving on eastbound I-76 and a search that turned up drugs, the substance of the legal dispute in Ramos was not the justification for the initial stop; it was the lawfulness of the driver’s continued detention after the stop. Id. at 296–97. Apart from footnoting that “[d]riving outside the boundaries of a marked lane constitutes a class A traffic infraction,” id. at 296 n.1 (citing § 42-4-1007(2), 11 C.R.S. (1999)), we had no occasion to cite, let alone construe, the statute. Accepting as given the lawfulness of the stop there does not compel the conclusion that the stop was reasonable here; Ramos set down no per se rule. Likewise, Rodriguez, which we cited throughout Ramos, addressed the legality of a detention following a stop for weaving, but it did not address the validity of the initial stop. See Rodriguez, 945 P.2d at 1358 n.4 (reciting the issues on certiorari review, which assumed “a valid stop”). Because Ramos does not control, the trial court was right to seek other authority.
¶18          Indeed, its investigation of Tenth Circuit cases made good sense, considering that court has applied Colorado’s statute and the nearly identical laws of our neighboring states in a variety of factual settings. See, e.g., United States v. Harmon, 742 F.3d 451, 456–58 (10th Cir. 2014) (examining New Mexico’s law); United States v. Vazquez, 555 F.3d 923, 928 (10th Cir. 2009) (citing the provision from Utah); United States v.  Zabalza, 346 F.3d 1255, 1258 (10th Cir. 2003) (discussing the Kansas statute).[4] While these opinions are not binding on this court, they offer useful guidance.

¶19          We agree with the Tenth Circuit that assessing a suspected violation of section 42-4-1007(1)(a) requires consideration of the totality of the circumstances. The court in United States v. Valenzuela applied Colorado’s law and concluded, “[W]e must analyze objectively all the surrounding facts and circumstances to determine whether the officer had reasonable suspicion that a violation of the applicable statute had occurred.” 494 F.3d 886, 889 (10th Cir. 2007) (citing United States v. Ozbirn, 189 F.3d 1194, 1198 (10th Cir. 1999) out of Kansas). Such an inquiry is proper because what is “practicable” in any given situation depends on the circumstances. Accord Black’s Law Dictionary 1361 (10th ed. 2014) (defining “practicable” as “reasonably capable of being accomplished; feasible in a particular situation”). Thus, in order to determine whether a driver complied with the statute, it is essential to consider the totality of the circumstances. With this interpretation in mind, we now consider this stop.
D. Reasonable Suspicion Supported This Stop

¶20          Under the circumstances, Chavez-Barragan’s two trips across the fog line gave rise to a reasonable, articulable suspicion of a violation of section 42-4-1007(1)(a). No adverse weather affected his ability to comply with the law, and the nighttime conditions and lack of overhead lighting, while relevant, were not so significant as to make lane maintenance impracticable. The barrels and pylons narrowed the road, but the trial court nevertheless found the lane was “adequate in width” for Chavez-Barragan’s semi-truck. Indeed, his driving through the rest of the construction zone is consistent with the conclusion that driving entirely within a single lane was practicable.[5] Therefore, reasonable suspicion supported this stop.[6]

¶21          Chavez-Barragan points us to United States v. Gregory, 79 F.3d 973, 975–76 (10th Cir. 1996), where the defendant’s U-Haul truck crossed two feet onto the shoulder of a winding mountain road on a windy day. There, the Tenth Circuit held that the officer who observed this lone crossing lacked a reasonable suspicion to stop the defendant because this incident did not violate Utah’s similarly worded law. Id. at 978.
¶22          But significantly, he does not bring to our attention any case where a motion to suppress was granted that involved a driver crossing the line twice. Cf. United States v.  Langel, 269 F. App’x 787, 788, 790–91 (10th Cir. 2008) (upholding a stop on Colfax Avenue where the defendant’s car crossed into the left lane about a foot, drifted further to straddle the line for about a second, then “abruptly” swerved back to the right lane); Valenzuela, 494 F.3d at 887–89 (upholding a stop where the defendant, moving down the left lane of a Greeley city street, drove three or four feet into the right lane for a few seconds and then moved back to his original lane); Ozbirn, 189 F.3d at 1196, 1198–99 (upholding a stop in Kansas where a motor home moved onto the shoulder twice over a quarter-mile stretch of dry, smooth highway on a sunny day).[7]

¶23          We believe these cases cut in favor of the stop’s reasonableness. While we accept the facts as found by the trial court, we take a different view of their legal significance and conclude that Chavez-Barragan’s driving created a reasonable suspicion that section 42-4-1007(1)(a) had been violated.
III. Conclusion
¶24          We reverse the trial court’s suppression order and remand for further proceedings. Because the trial court concluded that the initial stop was unreasonable, it did not decide whether Chavez-Barragan’s consent to the search of the truck was voluntary. We express no opinion on that question or any other aspects of the suppression motion. We simply find that the initial stop was reasonable.

[1] Our recitation of the facts draws from the trial court’s thorough findings made after an evidentiary hearing.
[2] The People certified that this appeal was not taken for purposes of delay and that the suppressed evidence constituted a substantial part of the proof in the case against Chavez-Barragan. See C.A.R. 4.1(a).
[3] We are aware that the courts of other states have reached differing interpretations of their similarly worded statutes. Some read their laws as creating a single offense that is accomplished when a driver fails to maintain lanes as nearly as practicable and moves lanes without first ascertaining that such movement can be safely made. Others construe their statutes as creating two offenses—effectively, one for weaving and one for unsafe lane changes. See State v. Regis, 32 A.3d 1109, 1115–16 (N.J. 2011) (surveying the divide). Here, both sides assume a driver violates the statute by failing to drive within a single lane “as nearly as practicable” and focus on that language. We do the same and offer no opinion on that larger debate.
[4] The availability of conditional guilty pleas might explain the relative abundance of federal decisions in this area. In the federal system, as in most states, defendants may bring their suppression arguments to an appellate court even after a plea of guilty. See Fed. R. Crim. P. 11(a)(2); Neuhaus v. People, 2012 CO 65, ¶ 9 nn.4–5, 289 P.3d 19, 21 nn.4–5 (surveying state practices). Colorado, by contrast, does not permit conditional guilty pleas. See Neuhaus, ¶ 16, 289 P.3d at 23.
[5] The trial court found that Chavez-Barragan’s movement onto the shoulder “did not impede traffic or pose a danger of collision.” In line with some of the Tenth Circuit cases addressing Colorado’s law, see, e.g., United States v. Langel, 269 F. App’x 787, 790 (10th Cir. 2008); Valenzuela, 494 F.3d at 889, the trial court seemed to treat an incursion onto the shoulder as less serious than a drift into another lane of traffic. While the latter is more dangerous and could rationally factor into an officer’s decision to issue a citation, we find no basis in the language of the statute for distinguishing a weave to the left from a weave to the right. We therefore do not consider this distinction in assessing practicability.
[6] For the first time on appeal, the People argued in the alternative that the stop should be upheld even if Officer Ponce lacked a reasonable suspicion that Chavez-Barragan violated section 42-4-1007(1)(a). What matters, the People contend, is not whether Chavez-Barragan violated the law but whether he violated Officer Ponce’s understanding of the law—so long as her understanding, even if mistaken, was “reasonable under the circumstances.” While Heien v. North Carolina, 135 S. Ct. 530 (2014), held that reasonable suspicions resting on reasonable mistakes of law can support stops when the legal mistake is “objectively reasonable,” id. at 539 (emphasis in original), we need not address this argument. First, “we will not consider arguments injecting an issue not adequately presented to the trial court.” People v. Syrie, 101 P.3d 219, 223 n.7 (Colo. 2004) (declining to address the prosecution’s unpreserved search-incident-to-arrest theory). Moreover, our conclusion that Chavez-Barragan’s driving gave rise to a reasonable suspicion that he actually violated section 42-4-1007(1)(a) obviates any need to address mistake-of-law considerations.
[7] That is not to say a driver necessarily violates the statute by going over the line two times, nor is there a one-time safe harbor. Sometimes just one slip-up will support a stop in the absence of adverse conditions. See United States v. Alvarado, 430 F.3d 1305, 1306–07, 1309 (10th Cir. 2005) (upholding a stop in Utah after a single, one-foot crossing onto the shoulder “for a few seconds” on a clear, sunny winter day on a dry, flat stretch of I-70); United States v. Cline, 349 F.3d 1276, 1285, 1287 (10th Cir. 2003) (upholding a stop in Kansas following a one-to-two-foot swerve over the fog line on a “clear but windy” day). In each case, “all the surrounding facts and circumstances” must be objectively considered in evaluating whether the driver kept his vehicle within a single lane as nearly as practicable. See Valenzuela, 494 F.3d at 889.