1
 2025 CO 16 The People of the State of Colorado, Plaintiff-Appellant v. Sheron Mario Furness, Defendant-Appellee No. 24SA255
Supreme Court of Colorado, En Banc
April 14, 2025
 
          
 Interlocutory Appeal from the District Court Arapahoe County
 District Court Case No. 22CR1975 Honorable LaQunya L. Baker,
 Judge
 
 
          Order
 Reversed
 
 
          
 Attorneys for Plaintiff-Appellant: John Kellner, District
 Attorney, Eighteenth Judicial District Laura Wood, Deputy
 District Attorney Centennial, Colorado
 
 
          
 Attorneys for Defendant-Appellee: Megan A. Ring, Public
 Defender Regina Fountain, Deputy Public Defender Kevin
 Herndon, Deputy Public Defender Centennial, Colorado
 
 2
 
          
 JUSTICE BERKENKOTTER delivered the Opinion of the Court, in
 which CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT,
 JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE HART, and JUSTICE
 SAMOUR joined.
 
 3
 
          
 OPINION
 
 
          
 BERKENKOTTER JUSTICE
 
 
          ¶1
 The People bring this interlocutory appeal under C.A.R. 4.1,
 challenging an order of the Arapahoe County District Court
 suppressing all evidence found in the trunk of Sheron Mario
 Furness's vehicle during a warrantless search. The
 district court determined that the officers who searched the
 trunk of Furness's car did not have probable cause to do
 so.
 
 
          ¶2
 Because we conclude the officers reasonably believed, under
 the totality of the circumstances, that the trunk would
 contain evidence of a crime, we reverse the district
 court's order and remand the case for further proceedings
 consistent with this opinion.
 
 
          I.
 Facts and Procedural History
 
 
          ¶3
 Late on the night of August 26, 2022, Arapahoe County Sheriff
 Deputy Swank was driving through Centennial, Colorado on a
 routine patrol when he heard four gunshots.[1] He headed toward
 the sound of the gunshots and found several people standing
 in front of the Green Tree Hotel ("the Hotel") who
 reported hearing multiple gunshots come from behind the
 Hotel.
 
 4
 
          ¶4
 A second officer, Deputy Nolan, arrived on the scene and
 contacted two men who were standing in the parking lot behind
 the Hotel near a dark-colored Lexus sedan. One of the men,
 who was later identified as Furness, was standing near the
 trunk of the vehicle. The other man was Furness's friend,
 V.M. Furness indicated that he had seen a white male in the
 grass-covered area across from the parking lot shoot a gun
 once and leave on foot.
 
 
          ¶5
 After Furness stated that he was looking for his car keys,
 Deputy Nolan commented that the Lexus's front
 passenger's-side car window was open. Furness responded
 to this observation by repeatedly saying there was no gun in
 the car. Upon further inspection, Deputy Nolan noticed that
 the driver's-side car window was also completely rolled
 down. Throughout Deputy Nolan's interaction with Furness
 and V.M., V.M. repeatedly volunteered that he and Furness had
 been drinking alcohol. Furness later confirmed that he was at
 the Hotel to get drunk with his friend.
 
 
          ¶6
 The officers did not find any shell casings in the
 grass-covered area Furness identified, although they did find
 car keys there. A third officer, Sergeant Norris, used the
 key fob to confirm that the keys were paired with the Lexus
 and, after Furness acknowledged that the Lexus was his car,
 Sergeant Norris returned the keys to him. When Deputy Swank
 asked Furness why his keys were in the grass-
 
 5
 
 covered area across from the parking lot, Furness responded
 that he and his friend were drunk and "playing
 around."
 
 
          ¶7
 Shortly after Furness's keys were returned, Deputy Swank
 looked through the Lexus's windows with his flashlight
 and saw what appeared to be a gun case on the backseat and an
 empty bottle of Fireball whiskey on the driver's seat.
 Notably, when Deputy Swank looked into the vehicle with his
 flashlight, the windows of the car were rolled up. Deputy
 Swank then obtained Furness's name, ran it through the
 computer system, and determined that Furness had a protection
 order prohibiting him from, among other things, possessing or
 consuming alcohol or controlled substances. The police
 arrested Furness for violation of the protection order based
 on his admitted consumption of alcohol.
 
 
          ¶8
 Meanwhile, a fourth officer, Deputy Delarossa, was speaking
 with a witness at the Quality Hotel next door. The witness
 identified the shooter as a Black male wearing a black shirt
 in a dark Mercedes or Lexus with tinted windows.
 Additionally, the witness said the shooter's first name
 was "Sheron." The witness's description matched
 Furness's first name, physical appearance, his
 vehicle's appearance, and Furness's and the
 vehicle's location. The witness subsequently participated
 in a show-up identification and positively identified Furness
 as the shooter.
 
 6
 
          ¶9
 After the witness identified Furness as the shooter, Deputy
 Nolan determined that the officers had probable cause to
 search the vehicle for evidence of the shooting and the
 protection order violations. Upon opening the driver's
 door, Deputy Nolan found two bags that were later determined
 to contain 12.9 grams of cocaine and 0.8 grams of
 methamphetamine. He then opened the gun case in the backseat,
 which contained an empty magazine. Next, Deputy Nolan
 searched the trunk of the vehicle, where he found a Taurus
 9-millimeter handgun, ammunition for the handgun, five
 twenty-dollar bills, and a scale with white powder residue on
 it. Deputy Nolan examined the handgun and noted that it had
 eleven out of fifteen rounds in the magazine, with one round
 in the chamber, and that the gun's hammer was cocked
 back.
 
 
          ¶10
 Furness was charged with (1) possession with intent to
 manufacture or distribute a controlled substance, (2)
 unlawful possession of a controlled substance, (3) special
 offender, (4) prohibited use of a weapon, (5) disorderly
 conduct, (6) violation of a protection order, and (7)
 controlled substance-special offender-deadly weapon. Furness
 moved to suppress all the evidence found in the trunk,
 arguing that law enforcement lacked probable cause to conduct
 a warrantless search of the trunk. Specifically, Furness
 contended that, because he did not have access to his locked
 trunk, the officers lacked probable cause to search there.
 
 7
 
          ¶11
 Following a hearing, the district court found that law
 enforcement did have probable cause to search the backseat
 and passenger compartment of Furness's car because the
 Fireball whiskey and gun case, which were in plain view, made
 it reasonable for officers to believe there was evidence of
 crimes inside the passenger compartment of his car. However,
 the district court concluded that law enforcement did not
 have probable cause to search the trunk of Furness's
 vehicle. Emphasizing the lack of access from the backseat of
 the vehicle to the trunk, the district court concluded that
 there was no way an occupant could quickly transfer items,
 such as a gun, from the passenger compartment to the trunk.
 The Lexus was not, the court observed, a hatchback-there was
 no access from the backseat to the trunk. The district court
 also determined that neither the level of controlled
 substances found in the vehicle nor the possession of a
 bottle of Fireball whiskey would support an expanded search
 of the trunk. Accordingly, the district court suppressed all
 the evidence found in the trunk of Furness's vehicle.
 
 
          ¶12
 The People then filed this interlocutory appeal.
 
 
          II.
 Analysis
 
 
          ¶13
 We begin by addressing the basis for our jurisdiction and the
 appropriate standard of review. Next, we discuss the
 automobile exception to the warrant requirement, which
 permits the warrantless search of a vehicle when, based on
 the totality of the circumstances, there is probable cause to
 believe that the vehicle
 
 8
 
 contains evidence of a crime. Then, we apply these principles
 to the record before us and hold that the district court
 erred in finding that the officers lacked probable cause to
 search the trunk of Furness's car. Accordingly, we
 reverse the court's order suppressing the evidence found
 in the trunk.
 
 
          A.
 Jurisdiction and Standard of Review
 
 
          ¶14
 Section 16-12-102(2), C.R.S. (2024), and C.A.R. 4.1 allow the
 prosecution to file an interlocutory appeal with this court
 to seek relief from a district court's ruling granting a
 defendant's pretrial motion to suppress evidence. The
 prosecution may do so only if it certifies to the judge who
 issued the order and to our court "that the appeal is
 not taken for the purposes of delay and the evidence is a
 substantial part of the proof of the charge pending against
 the defendant." § 16-12-102(2); accord
 C.A.R. 4.1(a); see also People v. Brown, 2022 CO 11,
 ¶ 13, 504 P.3d 970, 974-75. Based on our review of the
 record, the prosecution fulfilled this requirement;
 therefore, we have jurisdiction over this interlocutory
 appeal.[2]¶15 A district court's suppression
 order presents a mixed question of law and fact. People
 v. Chavez-Barragan, 2016 CO 16, ¶ 9, 365 P.3d 981,
 983. We therefore accept and defer to a district court's
 findings of fact so long as those facts are
 
 9
 
 supported by competent evidence in the record. Id.
 However, we review the district court's conclusions of
 law de novo. People v. Zuniga, 2016 CO 52, ¶
 13, 372 P.3d 1052, 1056.
 
 
          B. The
 Automobile Exception
 
 
          ¶16
 Under both the United States and Colorado Constitutions,
 people have the right to be free from unreasonable searches
 and seizures. U.S. Const. amend. IV; Colo. Const. art. II,
 § 7. Warrantless searches "are per se unreasonable
 under the Fourth Amendment-subject only to a few specifically
 established and well-delineated exceptions." Katz v.
 United States, 389 U.S. 347, 357 (1967); see also
 Mendez v. People, 986 P.2d 275, 279 (Colo. 1999)
 (stating that a warrantless search is unconstitutional
 "unless it is supported by probable cause and is
 justified under one of the narrowly defined exceptions to the
 warrant requirement"). If a warrantless search violates
 the Fourth Amendment, the "use of the seized evidence
 involve[s] a 'denial of the constitutional rights of the
 accused,'" and thus, "'the Fourth Amendment
 bar[s] the use of evidence secured through an illegal search
 . . . .'" Mapp v. Ohio, 367 U.S. 643, 648
 (1961) (first quoting Weeks v. United States, 232
 U.S. 383, 398 (1914); and then quoting Wolf v.
 Colorado, 338 U.S. 25, 28 (1949)); see also
 Zuniga, ¶ 14, 372 P.3d at 1057 (requiring
 suppression of the evidence obtained in an unconstitutional
 search).
 
 10
 
          ¶17
 One exception to the warrant requirement is the automobile
 exception. We have explained that the automobile exception
 "permits the warrantless search of an automobile if
 there is probable cause to believe that the automobile
 contains evidence of a crime." Zuniga, ¶
 12, 372 P.3d at 1056. The automobile exception "does not
 have a separate exigency requirement: 'If a car is
 readily mobile and probable cause exists to believe it
 contains contraband, the Fourth Amendment . . . permits
 police to search the vehicle without more.'"
 People v. Allen, 2019 CO 88, ¶ 32, 450 P.3d
 724, 731 (omission in original) (quoting Maryland v.
 Dyson, 527 U.S. 465, 467 (1999)).
 
 
          ¶18
 The scope of such a search, however, is not without limits:
 "The scope of a warrantless search of an automobile . .
 . is defined by the object of the search and the places in
 which there is probable cause to believe that it may be
 found." California v. Acevedo, 500 U.S. 565,
 579-80 (1991) (quoting United States v. Ross, 456
 U.S. 798, 824 (1982)). This means "an individual's
 expectation of privacy in a vehicle," including a
 vehicle's trunk or glove compartment, "may not
 survive if probable cause is given to believe that the
 vehicle is transporting contraband." Ross, 456
 U.S. at 823.
 
 
          ¶19
 "If probable cause justifies the search of a lawfully
 stopped vehicle, it justifies the search of every part of
 the vehicle and its contents that may conceal the object
 of the search." Id. at 825 (emphasis added);
 see also Acevedo, 500 U.S. at 580
 
 11
 
 (upholding the warrantless search of a bag in a vehicle's
 trunk because "[t]he police may search an automobile and
 the containers within it where they have probable cause to
 believe contraband or evidence is contained");
 People v. Cox, 2017 CO 8, ¶ 15, 401 P.3d 509,
 512 (concluding that "under the totality of the
 circumstances, [the officer] had probable cause to search the
 vehicle's trunk"); People v. Haggart, 533
 P.2d 488, 490 (Colo. 1975) (noting that, because there was
 probable cause, the warrantless search of the defendant's
 trunk fell under one of the "specifically established
 and well-delineated exceptions" to the warrant
 requirement).
 
 
          ¶20
 Thus, law enforcement officers may conduct a warrantless
 search of a specific location within a vehicle only when they
 have probable cause to believe that location may
 contain evidence of a crime and the object of the search.
 They cannot broaden the search, for example, from the
 passenger compartment to the trunk, without probable cause to
 believe that the trunk also contains evidence of a crime and
 the object of the search.
 
 
          ¶21
 "A police officer has probable cause to conduct a search
 when the facts available to him would warrant a person of
 reasonable caution in the belief that contraband or evidence
 of a crime is present." People v. Bailey, 2018
 CO 84, ¶ 20, 427 P.3d 821, 827 (quoting Florida v.
 Harris, 568 U.S. 237, 243 (2013)). In evaluating
 "this practical and common-sensical standard,"
 courts have "rejected rigid rules,
 
 12
 
 bright-line tests, and mechanistic inquiries" in favor
 of "consistently look[ing] to the totality of the
 circumstances." Harris, 568 U.S. at 244;
 see also Mendez, 986 P.2d at 280 (explaining that
 the probable cause analysis "requires us to look at the
 totality of the circumstances" to "make a
 practical, common sense decision whether a fair probability
 exists that a search of a particular place will reveal
 contraband or evidence of a crime").
 
 
          ¶22
 However, probable cause need not be considered in a vacuum.
 Instead, "probable cause is a fluid concept-turning on
 the assessment of probabilities in particular factual
 contexts-not readily, or even usefully, reduced to a neat set
 of legal rules." Illinois v. Gates, 462 U.S.
 213, 232 (1983); see also Maryland v. Pringle, 540
 U.S. 366, 372 n.2 (2003) (noting that the "court's
 consideration of [one fact] in isolation, rather than as a
 factor in the totality of the circumstances, is mistaken in
 light of our precedents"); Grassi v. People,
 2014 CO 12, ¶ 23, 320 P.3d 332, 338 (same).
 
 
          ¶23
 Lastly, "probable cause does not demand . . .
 certainty." Gates, 462 U.S. at 246; see
 also Mendez, 986 P.2d at 280. Rather, "probable
 cause [analyses] . . . deal with probabilities . . .; they
 are the factual and practical considerations of everyday life
 on which reasonable and prudent men, not legal technicians,
 act." Brinegar v. United States, 338 U.S. 160,
 175 (1949); see also Mendez, 986 P.2d at
 280.
 
 13
 
          ¶24
 Bearing these principles in mind, we turn next to examine the
 facts in this case to determine whether the district court
 erred in concluding that law enforcement officers lacked
 probable cause to search the trunk of Furness's vehicle.
 
 
          C.
 Probable Cause
 to Search
 the Vehicle's
 Trunk
 
 
          ¶25
 The People contend that the district court erred by focusing
 only on whether the trunk was readily accessible from the
 passenger compartment of the car. They argue that by doing
 so, the district court failed to consider the evidence
 supporting the inference that Furness was able to access the
 trunk from the outside of the vehicle. Furness counters that
 the vehicle was locked and the keys were not in his
 possession when law enforcement arrived, so it would be
 illogical to assume that he had any access to the trunk after
 the shooting. We agree with the People.
 
 
          ¶26
 The district court's ruling is premised on the notion
 that Furness could not have hidden a gun in the trunk after
 the shots were fired because he did not have access to the
 trunk. Based on our review of the record, that premise is
 unfounded. There is no evidence in the record that the
 vehicle, including the trunk, was locked before, during, or
 immediately after the shooting. Moreover, we know that when
 Deputy Nolan initially arrived on the scene, Furness was
 standing next to the trunk, he did not have his keys, and
 both the driver's-side and passenger's-side windows
 of Furness's vehicle were rolled down. Thus, it
 was reasonable for the
 
 14
 
 officers to believe that the car was unlocked and that
 Furness could have opened the trunk and hidden a gun before
 they arrived. But, more importantly, even if the car was
 locked, it was reasonable for the officers to believe that
 Furness could have reached into the Lexus through one of the
 open windows, unlocked the vehicle, and placed a gun inside
 the trunk before they arrived. That is, whether the vehicle
 was locked or unlocked, Furness had easy access to the trunk
 before the officers arrived.
 
 
          ¶27
 To be sure, when Deputy Swank looked inside the Lexus with a
 flashlight not long thereafter and saw the gun case, the
 car's windows were rolled up. But this happened
 after Sergeant Norris found Furness's keys and returned
 them to him. And, notably, for purposes of analyzing probable
 cause, the fact that someone-whoever that might have
 been-rolled the windows up does not negate the reasonable
 inferences that flow from the fact that the car's windows
 were rolled down and Furness was standing near the trunk when
 the officers first arrived.
 
 
          ¶28
 Accordingly, we conclude that under the totality of the
 circumstances, it was reasonable for the officers to believe
 that there was a gun in the trunk. As noted, the test for
 probable cause "does not lend itself to mathematical
 certainties," Mendez, 986 P.2d at 280, and
 instead calls for "consideration of any and all facts
 that a reasonable person would consider relevant to a police
 officer's belief that
 
 15
 
 contraband or evidence of a crime is present,"
 Zuniga, ¶ 16, 372 P.3d at 1057. Here, the
 relevant facts include:
 
 
 • Furness was at the scene of the shooting.
 
 
 • When the officers arrived, Furness was standing near
 the trunk of his vehicle, complaining that he could not find
 his car keys.
 
 
 • Furness's keys were found in the grass-covered
 area behind the Hotel in the same location Furness said he
 saw the shooter.
 
 
 • Furness repeatedly told officers there was no gun in
 his car.
 
 
 • Officers observed an empty gun case in Furness's
 vehicle.
 
 
 • There was no evidence that the car was locked.
 
 
 • Even if the car was locked, the front windows were
 both rolled down when the deputies first contacted Furness,
 meaning he had the ability to unlock the car and place the
 gun in the trunk.
 
 
 • A witness identified Furness as the shooter.
 
 
 • The gun was not located anywhere else.
 
 
          ¶29
 These facts, taken in combination, support the conclusion
 that the officers had probable cause to search the
 Lexus's trunk for the gun used in the shooting. The
 district court erred in assuming that Furness could only have
 accessed the trunk from inside of the vehicle. As explained
 above, under these circumstances, it was reasonable for the
 officers to infer that Furness had access to the trunk from
 outside of the car. The district court therefore erred in
 suppressing the evidence obtained from that search.
 
 16
 
          III.
 Conclusion
 
 
          ¶30
 Because law enforcement officers had probable cause to
 conduct a warrantless search of the trunk of Furness's
 vehicle, we reverse the district court's suppression
 order and remand the case for further proceedings consistent
 with this opinion.
 
 
 ---------
 
 
 Notes:
 
 
 [1] We derive the facts from our review of
 the transcripts of the officers' testimony at the
 suppression hearing, as well as footage from three of the
 officers' body-worn cameras. See People v.
 Kutlak, 2016 CO 1, ¶ 13, 364 P.3d 199, 203 (noting
 that when there is an audio-visual record and there are no
 disputed facts outside the recording controlling the
 suppression issue, we sit in a similar position as the
 district court and, therefore, may independently review the
 recording).
 
 
 [2] Pursuant to C.A.R. 4.1(a), the People
 certify that this appeal "is not taken for the purpose
 of delay" and that the suppressed evidence constitutes
 "a substantial part of the proof of the charge pending
 against the defendant" by establishing ownership of the
 firearm. Furness does not object to this
 certification.
 
 
 ---------