Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
January 14, 2019

**2019 CO 2**

**No. 18SA180,** *People v. Burnett*—Searches and Seizures—Reasonable Suspicion—
**Mistake of Law.**

In this interlocutory appeal, the supreme court considers whether a Colorado State
Patrol trooper made a reasonable mistake of law when the trooper stopped a car for
making what he believed to be an illegal lane change after witnessing the driver flash her
turn signal twice over a distance of less than 200 feet and then change lanes.  The supreme
court holds that the trooper's erroneous interpretation of the governing statute, section
42-4-903, C.R.S. (2018), did not constitute an objectively reasonable mistake of law.  It is
plain from the text of the statute that a driver is not required to signal continuously for
any set distance before changing lanes on a highway; the statute only requires that a
driver use a signal before changing lanes.  Thus, because this was not a reasonable
mistake of law, the trooper did not have reasonable suspicion to justify the investigatory
stop.  The supreme court therefore affirms the trial court's suppression order.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

### 2019 CO 2

---

**Supreme Court Case No. 2018SA180**
*Interlocutory Appeal from the District Court*
El Paso County District Court Case No. 18CR950
Honorable Gregory R. Werner, Judge
Honorable Gilbert A. Martinez, Senior Judge

---

### Plaintiff-Appellant:

The People of the State of Colorado,

v.

### Defendant-Appellee:

Devon Paul Garrett Burnett.

---

### Order Affirmed
*en banc*
January 14, 2019

---

**Attorneys for Plaintiff-Appellant:**
Daniel H. May, District Attorney, Fourth Judicial District
Andrew Lower, Deputy District Attorney
Doyle Baker, Senior Deputy District Attorney
   *Colorado Springs, Colorado*

**Attorneys for Defendant-Appellee:**
Megan A. Ring, Public Defender
Max E. Shapiro, Deputy Public Defender
   *Colorado Springs, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**JUSTICE BOATRIGHT** dissents, and **CHIEF JUSTICE COATS** joins in the dissent.

¶1 While driving down a highway, a Colorado State Patrol (CSP) trooper observed another driver flash her turn signal twice over a distance of less than 200 feet and then change lanes. Apparently believing he'd just witnessed an illegal lane change, the trooper stopped the car in which there was a passenger—the defendant, Devon Burnett.

¶2 A subsequent search of the car revealed a handgun, drug paraphernalia, and suspected methamphetamine. As a result, Burnett was charged with multiple offenses, including possession with intent to manufacture or distribute a controlled substance and possession of a weapon by a previous offender.

¶3 Burnett filed a motion to suppress the evidence found during the search that flowed from the stop for the allegedly illegal lane change. He argued that the statute governing turning movements and required signals, section 42-4-903(2), C.R.S. (2018), doesn't require a person to signal for a minimum distance before changing lanes; therefore, the trooper did not have reasonable suspicion to stop the car. The trial court agreed and suppressed the fruits of the search.

¶4 The People filed this interlocutory appeal, contending in part that the trooper at worst made an objectively reasonable mistake of law when he concluded that changing lanes on the highway without signaling for 200 feet violated section 42-4-903(2). Consequently, the People argue that the trooper had reasonable suspicion to stop the car.

¶5 We conclude that the trooper's construction of section 42-4-903(2) was objectively unreasonable. The plain language of the statute clearly distinguishes between turns and lane changes, and the statute does not require a driver to signal continuously for any set

2

distance before changing lanes on a highway—it only requires that a driver use a signal before changing lanes. Therefore, we affirm the trial court's suppression order.

## I. Facts and Procedural History[1]

¶6      Burnett was a passenger in a black sedan traveling along Highway 21 in El Paso County. Trooper Stephen Wall watched as the driver engaged the sedan's turn signal, allowed it to flash twice for less than 200 feet, and then changed lanes. Trooper Wall stopped the sedan.

¶7      As the sedan pulled over, Trooper Wall noticed the passenger moving around in a manner that suggested he could be "attempt[ing] to conceal contraband or produce a weapon." Concerned for his safety, Trooper Wall radioed for cover. When Trooper Wall approached the car, he noticed that Burnett looked unusually nervous. This seemed strange to Trooper Wall, considering Burnett was only the passenger and not the subject of the stop. In addition to asking for the driver's identification, Trooper Wall asked Burnett to show the trooper his identification. Burnett complied.

¶8      After dispatch advised Trooper Wall that Burnett was subject to a restraining order that prohibited Burnett from possessing weapons, another trooper observed a handgun magazine on the passenger side of the car. Law enforcement personnel then searched the entire passenger compartment. The troopers found a handgun underneath Burnett's seat, along with a substance believed to be methamphetamine, drug paraphernalia, baggies,

---

[1] These facts are drawn from undisputed testimony and the trial court's findings made at the suppression hearing.

3

and a scale. CSP arrested Burnett, who was later charged with multiple offenses, including possession with intent to manufacture or distribute a controlled substance and possession of a weapon by a previous offender.

¶9     Burnett moved to suppress all evidence resulting from the stop, claiming Trooper Wall had no reasonable suspicion to believe a traffic violation had occurred under section 42-4-903(2). The trial court granted the motion to suppress, concluding that section 42-4-903(2) does not require a car to signal continuously for 200 feet before changing lanes on a highway—"that only applies to turning right or left."

¶10    The People filed a motion to reconsider the suppression order, arguing that the trooper made a reasonable mistake of law because section 42-4-903(2) can be read as applying to lane changes. They contended that under *Heien v. North Carolina*, 135 S. Ct. 530 (2014), this objectively reasonable mistake of law provided reasonable suspicion for the traffic stop. The trial court denied the motion to reconsider, without explicitly addressing the reasonable mistake of law argument under *Heien*.[2]

¶11    The People filed this interlocutory appeal.

---

[2] The People raised the *Heien* argument for the first time in their motion to reconsider. Burnett responded to the argument, first urging the court to apply a plain error standard to review the *Heien* argument and, alternatively, arguing that if the court reached the merits of the People's argument, Trooper Wall's mistake was not reasonable. Although the trial court did not explicitly address *Heien* when denying the motion to reconsider, it did address the merits of the People's argument. Accordingly, we too reach the merits of the underlying motion to suppress.

4

## II. Analysis

¶12 We first review relevant Fourth Amendment principles, including precedent from the U.S. Supreme Court stating that an objectively reasonable mistake of law can support a finding that there was reasonable suspicion to justify an investigatory stop. We then address section 42-4-903 and determine that its plain language only requires that a driver signal before changing lanes—it does not require a driver to signal continuously for any set distance before changing lanes. Because the text of the statute is clear, we conclude that the trooper's construction of section 42-4-903 was not objectively reasonable.

### A. Standard of Review

¶13 A trial court's order suppressing evidence presents a mixed question of law and fact. *People v. Chavez-Barragan*, 2016 CO 16, ¶ 9, 365 P.3d 981, 983. "We accept the trial court's findings of historic fact if those findings are supported by competent evidence, but we assess the legal significance of the facts de novo." *Id.* We also review "[r]elated issues of statutory construction . . . de novo." *Id.*

### B. The Fourth Amendment and Mistakes of Law

¶14 The Fourth Amendment to the U.S. Constitution protects individuals against unreasonable searches and seizures.[3] U.S. Const. amend. IV. "A traffic stop for a

---

[3] Article II, Section 7 of the Colorado Constitution provides similar protections. Burnett encourages us to reject the reasonable-mistake-of-law doctrine by holding that Article II, Section 7 affords greater protection than the Fourth Amendment in this area. But, Burnett made no argument below clearly invoking the Colorado Constitution. And the trial court did not explicitly ground its suppression ruling on state constitutional law. Accordingly, "[i]n the absence of a clear statement that a suppression ruling is grounded on state as

suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien*, 135 S. Ct. at 536. As relevant here, a brief, investigatory traffic stop is constitutional "when the officer has a reasonable, articulable suspicion that criminal activity 'has occurred, is taking place, or is about to take place.'" *Chavez-Barragan*, ¶ 10, 365 P.3d at 983 (quoting *People v. Ingram*, 984 P.2d 597, 603 (Colo. 1999)). An officer may thus stop a vehicle if the officer has a reasonable suspicion that the driver has committed a traffic violation.

¶15    Reasonable suspicion may exist even if an officer is mistaken about a critical fact or about the proper interpretation of a statute. However, "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable." *Heien*, 135 S. Ct. at 539.

¶16    In *Heien*, the Supreme Court held that an officer's mistaken interpretation of a traffic law was reasonable and, thus, could still justify a stop under the Fourth Amendment. *Id.* at 534. At issue was a North Carolina statute that required drivers to have at least one working brake light. *Id.* at 535. The officer pulled a vehicle over for failing to have two working brake lights because he incorrectly believed that was what the statute required. *Id.* at 534. Because the language of the statute was unclear and had not been previously interpreted by North Carolina's appellate courts, the U.S. Supreme

opposed to federal constitutional law, we will presume that a court relied on federal law in reaching its decision." *People v. McKinstrey*, 852 P.2d 467, 469 (Colo. 1993).

6

Court determined that the officer's mistaken interpretation was reasonable and could provide reasonable suspicion to justify the stop under the Fourth Amendment. *Id.* at 540. In reaching this conclusion, the Court noted "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id.* at 536 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)); *see also Casillas v. People*, 2018 CO 78M, ¶¶ 44–45, 427 P.3d 804, 815 (Samour, J., dissenting) (discussing the rationale behind the *Heien* majority's holding). *Heien* thus held that a mistaken interpretation of the law can still support a finding of reasonable suspicion if the mistake is *objectively* reasonable. *Heien*, 135 S. Ct. at 539. As a corollary of this holding, courts should not consider the "subjective understanding of the particular officer involved."[4] *Id.*

---

[4] In concurrence, Justice Kagan embraced the majority's framework and elaborated that an officer's ignorance of the law or lack of training are irrelevant, as is "an officer's reliance on 'an incorrect memo or training program from the police department.'" *Id.* at 541 (Kagan, J., concurring) (quoting *North Carolina v. Heien*, 737 S.E.2d 351, 360 (N.C. 2012) (Hudson, J., dissenting)). The law at issue must also be "'so doubtful in construction' that a reasonable judge could agree with the officer's view." *Id.* (quoting *The Friendship*, 9 F. Cas. 825, 826 (C.C.D. Mass. 1812) (No. 5,125)). So, as Justice Kagan explained: "If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not." *Id.*

Perhaps in an effort to make the *Heien* majority's general pronouncements more workable, some courts have looked to Justice Kagan's concurrence in *Heien* for guidance. *See, e.g.*, *State v. Sutherland*, 176 A.3d 775, 782–83 (N.J. 2018) (describing Justice Kagan's concurrence as containing "several important caveats" and collecting cases that "either followed or acknowledged [her] narrow interpretation of an objectively reasonable mistake of law"); *State v. Hurley*, 117 A.3d 433, 441 (Vt. 2015) (discussing how "Justice Kagan emphasized that the bar is high" when determining whether a mistake is

¶17    With these Fourth Amendment principles in mind, we now examine what section 42-4-903 requires.

## C. Section 42-4-903

¶18    Trooper Wall stopped the car in which Burnett was a passenger, on the belief that a failure to signal continuously for 200 feet before changing lanes on Highway 21 constituted a violation of section 42-4-903(2).

¶19    The relevant provisions of section 42-4-903 require a driver to signal continuously for 200 feet when intending to turn on any highway where the posted speed limit is more than forty miles per hour, but it also distinguishes between turns and lane changes. In relevant part, the statute provides:

> (2) A signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning in urban or metropolitan areas and shall be given continuously for at least two hundred feet on all four-lane highways and other highways where the prima facie or posted speed limit is more than forty miles per hour. . . .
>
> . . . .
>
> (4) The signals provided for in section 42-4-608(2) shall be used to indicate an intention to turn, change lanes, or start from a parked position and shall not be flashed on one side only on a parked or disabled vehicle or flashed

---

reasonable); *State v. Houghton*, 868 N.W.2d 143, 158 (Wis. 2015) (citing Justice Kagan's explanation of an objectively reasonable mistake of law).

We need not decide whether to join those courts that have relied upon Justice Kagan's concurrence in order to effectuate the majority's holding in *Heien*. While her thoughts might prove instructive in another case, they are not necessary for us to resolve the case before us today.

8

as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear.

§ 42-4-903.[5]

¶20     We employ common tools of statutory interpretation to aid in our understanding of this statute. "In construing a statute, we seek to give effect to the General Assembly's intent by according words and phrases their plain and ordinary meanings." *People v. Stellabotte*, 2018 CO 66, ¶ 32, 421 P.3d 174, 180 (quoting *State Farm Mut. Auto. Ins. Co. v. Fisher*, 2018 CO 39, ¶ 12, 418 P.3d 501, 504). We therefore look to the text of the statute first and, if it is clear, "we apply the plain and ordinary meaning of the provision." *Perfect Place, LLC v. Semler*, 2018 CO 74, ¶ 40, 426 P.3d 325, 332. A statute must also be considered "as a whole, construing each provision consistently and in harmony with the overall statutory design." *Id.* (quoting *Whitaker v. People*, 48 P.3d 555, 558 (Colo. 2002)). We may not construe a statute in a manner that would render any words or phrases superfluous. *People v. Rediger*, 2018 CO 32, ¶ 22, 416 P.3d 893, 899.

¶21     The plain language of the statute treats "turning right or left" differently from "changing lanes." Subsection (2) outlines the requirements for a driver turning right or left, while subsection (4) delineates when a turn signal must be used to, among other things, turn or change lanes. By referring to both lane changes and turns in subsection (4), the legislature made clear that the term "turn" in subsection (2) does not encompass

---

[5] Section 42-4-608(2), C.R.S. (2018), requires that motor vehicles that exceed specified measurements "be equipped with . . . signal lamps" and that those signal lamps be used on highways to give required signals.

the act of changing lanes. "[T]he use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings." *Id.* (quoting *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo. 2008)). To interpret the statute otherwise would render language in subsection (4) superfluous—if a "turn" includes a "lane change," then there would have been no need to state specifically in subsection (4) that a signal must be used when changing lanes. Accordingly, the provision that Trooper Wall believed the driver of the black sedan violated, subsection (2), does not apply to lane changes. Because subsection (2) does not apply to lane changes, and because there was no violation of subsection (4) since the driver signaled twice before changing lanes, Trooper Wall did not witness a traffic violation before stopping the car in which Burnett was a passenger.

¶22 So, it was a mistake of law for Trooper Wall to interpret section 42-4-903 as he did. We now consider whether this mistake of law was nevertheless objectively reasonable.

### D. The Mistake of Law Was Objectively Unreasonable

¶23 The People argue that section 42-4-903(2) can reasonably be construed as Trooper Wall apparently construed it. We disagree. Because section 42-4-903(2) is unambiguous, we conclude that Trooper Wall's mistake of law was not objectively reasonable.

¶24 The statute requires vehicles to signal continuously for at least 200 feet before turning right or left on a highway. There is no ambiguity as to whether a turn includes a lane change because subsection (4) specifically lists lane changes as distinct from turns. Thus, there is no need to consider whether a lane change is a type of turning movement encompassed in the definition of "turn" as the People suggest. Regardless of whether

10

"turn" is defined broadly enough to include lane changes, the statutory scheme treats turns and lane changes differently. Consequently, Trooper Wall's interpretation was not objectively reasonable under the plain language of the statute.

¶25 Though this is the first time section 42-4-903 has been interpreted by one of our appellate courts, the lack of such precedent does not transform Trooper Wall's interpretation into an objectively reasonable reading of the provision. While it is more likely that a mistake of law may be reasonable if there is no precedent contrary to an officer's reading of a statute, lack of precedent alone cannot rehabilitate a statutory interpretation that is unwarranted by the plain language and structure of the statute. *See United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016) ("*Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an *unambiguous* statute.").

¶26 The People offer *United States v. Rubio-Sepulveda*, 237 F. Supp. 3d 1116 (D. Colo. 2017), *appeal docketed*, No. 18-1055 (10th Cir. Feb. 13, 2018), as support for their argument that "the scope of subsection (2) remains unsettled until resolved by the appellate courts of this state." In *Rubio-Sepulveda*, law enforcement stopped the defendant's car for failing to signal continuously for a set distance before changing lanes. *Id.* at 1122. Though the federal district court ultimately deemed the stop valid for another reason, in a footnote the court discusses reasonable mistake of law. Concluding that the officer erred because section 42-4-903 "does not plainly contemplate a failure to signal for [a required distance] before changing lanes," *id.* at 1122 n.4, the federal district court found this mistake reasonable because there was no precedent interpreting the statute, and the Department

11

of Revenue's driver handbook contained the same incorrect interpretation. *Id.* But this footnoted analysis misses the mark—as previously noted, an appellate court need not explicitly define the parameters of a clear and unambiguous statute. And here, that is what we have. Thus, the People's reliance on *Rubio-Sepulveda* is misplaced.

¶27 For two reasons, we are also unpersuaded by the presence of an erroneous interpretation of section 42-4-903(2) in the Department of Revenue's driver handbook stating that a turn signal is required for at least 200 feet prior to changing lanes. First, there is no evidence in the record that Trooper Wall reviewed or relied on the Department's interpretation. And even if Trooper Wall had read the handbook, it would be irrelevant to our analysis because it would relate to the trooper's subjective understanding of the section and therefore couldn't justify the seizure. *Heien*, 135 S. Ct. at 539. Second, the handbook expressly states that "[i]t is not a book of laws and should not be used as a basis for any legal claims or actions. It is a book of information only and does not supersede Colorado Revised Statutes." Div. of Motor Vehicles, Colo. Dep't of Revenue, DR-2337, *Colorado Driver Handbook* 4 (2017). The handbook also refers readers back to Title 42, which does not require vehicles to signal continuously for either 100 or 200 feet before simply making a lane change.

¶28     Because Trooper Wall's interpretation of section 42-4-903 runs counter to the plain text of the statute, we conclude that his interpretation was not objectively reasonable and cannot support a finding of reasonable suspicion to justify the traffic stop at issue here. [6]

### III.  Conclusion

¶29     We conclude that Trooper Wall's construction of section 42-4-903(2) was not an objectively reasonable mistake of law.  It is plain from the text of the statute that a driver is not required to signal continuously for any set distance before changing lanes on a highway.  The statute only requires that a driver use a signal before changing lanes. Therefore, we affirm the trial court's suppression order.

**JUSTICE BOATRIGHT** dissents, and **CHIEF JUSTICE COATS** joins in the dissent.

---

[6] Because the parties have not addressed what remedy should follow if the stop was invalid, we are not confronted with the question of whether the proper remedy was exclusion of evidence.  In cases such as this, there are potentially two issues: (1) whether law enforcement violated the Fourth Amendment; and, (2) if so, whether the remedy should be exclusion.  *Heien*, 135 S. Ct. at 539; *Casillas*, ¶¶ 29–30, 427 P.3d at 812 (majority opinion).  In the notice of interlocutory appeal, the People framed the issue as follows: "Did the district court err in concluding that [the] trooper who stopped the car in which [the] defendant was riding made the stop without reasonable suspicion that a traffic infraction had occurred?" And in their briefs, both parties limited their arguments to whether there was a Fourth Amendment violation.  Neither party briefed application of the exclusionary rule.  Because "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present," *Greenlaw v. United States*, 554 U.S. 237, 243 (2008), we decline to address whether the exclusionary rule should apply in this instance.  In the absence of any argument to the contrary, exclusion remains the remedy here.

JUSTICE BOATRIGHT, dissenting.

¶30 The majority finds Trooper Wall's interpretation of section 42-4-903(2), C.R.S. (2018), objectively unreasonable. I disagree for three reasons. First, Trooper Wall's interpretation of the statute was arguably correct. Second, even if his interpretation was incorrect, it was objectively reasonable. Finally, even if Trooper Wall was incorrect and objectively unreasonable, his conduct does not warrant application of the exclusionary rule. Therefore, I respectfully dissent.

¶31 While the majority correctly recites the facts, it is important to note the immediate circumstances of the traffic stop. Trooper Wall was driving on a highway with a speed limit of fifty-five miles per hour when he saw a car give two quick blinks of its turn signal and change lanes. At such a speed, that is not enough notice to change lanes safely. I must note that over 250,000 accidents are caused by lane-change errors each year in the United States, meaning that one lane-change accident occurs every two minutes. *See* Nat'l Highway Traffic & Safety Admin., U.S. Dep't of Transp., DOT HS 809 571, *Analysis of Lane Change Crashes* (Mar. 2003). We are clearly dealing with a safety issue that requires regulation by the legislature and, ultimately, law enforcement attention.

## I. Trooper Wall's Interpretation of Section 42-4-903(2) Is Arguably Correct

¶32 The majority determines that Trooper Wall did not reasonably enforce subsection (2) of section 42-4-903 because the later subsection (4) distinguishes lane changes from turns. Maj. op. ¶¶ 23–24. But that distinction is not quite so simple.

1

¶33    When construing a statute, "[w]e must read the statute as a whole, construing each provision consistently and in harmony with the overall statutory design, if possible." *Whitaker v. People*, 48 P.3d 555, 558 (Colo. 2002). The statute in question is titled "Turning movements and required signals," and it contains five subsections.

¶34    Subsection (1) explains when a signal must be given, describing situations such as turning at an intersection or onto a private road or turning from a direct course or moving a vehicle left or right:

> No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in section 42-4-901, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or *move right or left upon a roadway* unless and until such movement can be made with reasonable safety and then only after giving an appropriate signal in the manner provided in sections 42-4-608 and 42-4-609.

§ 42-4-903(1) (emphasis added). The plain language of subsection (1) applies to lane changes, as a lane change is either "turn[ing] a vehicle from a direct course" or "mov[ing] right or left upon a roadway." *Id.* Thus, a driver may not change lanes until the lane change "can be made with reasonable safety" and the driver has "giv[en] an appropriate signal." *Id.*

¶35    Subsection (2), without defining what constitutes a "turn," explains how long a signal must be given, and it gives two options based on the car's location and speed:

> A signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning in urban or metropolitan areas and shall be given continuously for at least two hundred feet on all four-lane highways and other highways where the prima facie or posted speed limit is more than forty miles per hour.

2

§ 42-4-903(2).  Notably, subsection (2) does not require an intention to turn that causes a car to leave the highway or even an intention to turn that creates a complete change in direction.

¶36     Subsection (3) explains when signals (brake lights) are required for stops or sudden decreases in speed: "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided in sections 42-4-608 and 42-4-609 to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."  § 42-4-903(3).  While not applicable in this situation, as the signals referenced are brake lights, this subsection rounds out the situations where signals must be used.

¶37     Subsection (4) then explains *how* such signals should be used as well as how they should not be used:

> The signals provided for in section 42-4-608(2) shall be used to indicate an intention to turn, change lanes, or start from a parked position and shall not be flashed on one side only on a parked or disabled vehicle or flashed as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear.

§ 42-4-903(4).  The focus of subsection (4) is on the proper use of signals; they should be used to signal an intention to move but should not be used to signal an intention *not* to move.  This is a logical provision to include in a signaling statute, as a signal cannot be effective if it is used to indicate contrary intentions.

¶38     Finally, subsection (5) explains that "[a]ny person who violates any provision of this section commits a class A traffic infraction."  § 42-4-903(5).

3

¶39 Therefore, section 42-4-903(1) begins by listing the turning movements that require a signal, (2) next dictates for how long the signal must be given before so moving, (3) then sets forth the rule for when stopping or suddenly slowing requires a signal, (4) emphasizes when a signal should not be used, and (5) last sets forth the penalty for violations. Thus, when reading the statute as a whole, I do not believe that the legislature intended for subsection (4)—which explains when signals should *not* be used—to limit the scope of subsection (2)—which explains for how long signals *must* be used.

¶40 Moreover, it makes sense to require a signal for an adequate distance before changing lanes. If the purpose of a signal is to make other drivers aware of your intention to deviate from your current path of travel, requiring you to indicate that intent for a specific distance is reasonable regardless of how far off your current path you intend to deviate. Accordingly, I believe that Trooper Wall's interpretation of section 42-4-903(2)— that it applies to lane changes as well as turns—is arguably correct.

## II. Even if Incorrect, Trooper Wall's Interpretation of Section 42-4-903 Is Objectively Reasonable

¶41 Even assuming that Trooper Wall's interpretation is incorrect (as the majority concludes), his interpretation was nevertheless objectively reasonable for two reasons. First, the Department of Revenue repeatedly interpreted the statute the same way as Trooper Wall when creating its own literature. And second, a federal district court, addressing a similar situation, found the same interpretation to be objectively reasonable.

¶42 I begin with the Department of Revenue's own literature. The Department creates such literature to educate the public regarding Colorado traffic laws. And the most recent

4

edition of the Department's *Colorado Driver Handbook* interprets section 42-4-903's signaling requirements exactly as Trooper Wall did: "In urban or metropolitan areas, you must signal continuously for 100 feet before making a turn *or lane change*. On four-lane highways, where the posted speed limit is more than 40 mph, you must signal for 200 feet." Div. of Motor Vehicles, Colo. Dep't of Revenue, DR-2337, *Colorado Driver Handbook* 22 (2017) (emphasis added). This interpretation is consistent throughout the handbook.[1] When discussing turning, the handbook states that "[a]t speeds above 40 mph you must signal continuously for 200 feet before making a turn or lane change." *Id.* at 21. When discussing freeway driving, the handbook reminds drivers to "[s]ignal at least 200 feet before you change lanes and avoid frequent lane changes." *Id.* at 24. When explaining the driving test requirements, the handbook explains that one "performance requirement" of signaling on the test is that the driver "activates [the] signal the proper distance in advance of turning or making a lane change." *Id.* at 32.

¶43 The majority is correct that whether Trooper Wall read the Department of Revenue's driver handbook is irrelevant, as it would relate to Trooper Wall's subjective understanding of the statute. Maj. op. ¶ 27. The majority is also correct that the handbook does not supersede Colorado's statutory law. *Id.* Nevertheless, the interpretation in the

---

[1] The previous edition of the *Colorado Driver Handbook* contained the same interpretation. *See* Div. of Motor Vehicles, Colo. Dep't of Revenue, DR-2337, *Colorado Driver Handbook* 18, 21, 27 (2012).

handbook is relevant to whether Trooper Wall's interpretation of section 42-4-903(2) was *objectively* reasonable.

¶44    Giving further support to the objective reasonableness of Trooper Wall's interpretation is the U.S. District Court's reasoning in *United States v. Rubio-Sepulveda*, 237 F. Supp. 3d 1116 (D. Colo. 2017), *appeal docketed*, No. 18-1055 (10th Cir. Feb. 13, 2018).  In that case, an officer interpreted section 42-4-903(2) in the same manner as Trooper Wall. *Id.* at 1122 n.4.  The federal district court, relying on *Heien*, found that the officer's interpretation was mistaken but objectively reasonable.  *Id.*  In doing so, the federal district court distinguished a Fifth Circuit case, which held "that the officer's mistaken interpretation of a similar Texas turn signal provision was not a reasonable mistake of law in part because (1) the Texas Driver's Manuel [sic] supported an interpretation contrary to the officer's, i.e. supported a plain reading of the statutory provision, and (2) the Texas Court of Appeals had recently clarified the issue."  *Id.* (citing *United States v. Alvarado-Zarza*, 782 F.3d 246, 250 (5th Cir. 2015)).  Remarkably, our situation here is the complete opposite.  Colorado's driver handbook supports Trooper Wall's interpretation of the statute.  And, finally, at the time of Trooper Wall's actions, no Colorado appellate court had interpreted section 42-4-903(2) in any way, let alone in a way that says the signaling requirements do not apply to lane changes.[2]

---

[2] The defense argues that "even if section 42-4-903 could have been construed as ambiguous before *Rubio-Sepulveda* was issued, that opinion put officers on notice that section 42-4-903(2) does not apply to lane changes."  Answer Br. at 17.  While the *Rubio-*

¶45     Trooper Wall interpreted section 42-4-903(2) the same way the Department of Revenue has been interpreting it for at least six years and in a manner that a different court found objectively reasonable. As such, even if Trooper Wall's interpretation was incorrect, it was objectively reasonable.

### III. The Exclusionary Rule Should Not Apply

¶46     The majority today determines that there was a Fourth Amendment violation, but it declines to address whether suppression is warranted because the People framed the issue around Trooper Wall's objective reasonableness. This misses the point. In affirming the trial court's suppression order, the majority is implicitly affirming the trial court's determination that suppression was warranted. In fact, the notice of appeal states: "This interlocutory appeal is of the district court's ruling *suppressing the evidence* obtained as a result of the traffic stop." Notice of Appeal at 3 (emphasis added). Additionally, in the People's opening brief, they explain that "[t]he issue to be decided [is] whether the district court erred in granting defendant's motion to suppress evidence." Opening Br. at 7. Thus, in refusing to consider whether the exclusionary rule should apply, the majority misses the central question raised in this case.

---

*Sepulveda* Court found the officer's reading of the statute to be mistaken, it reached that conclusion in a footnote. Despite that footnote, the court relied on a different theory altogether to hold that the stop was legal. *Rubio-Sepulveda*, 237 F. Supp. 3d at 1122 n.4. As such, the court's interpretation of the statute is dicta. While I hold law enforcement to a high standard and expect officers to know the law, to conclude that this trooper acted objectively unreasonably because he was put on notice by an arguably irrelevant footnote in a non-binding case is unrealistic.

7

¶47    At the end of the day, the question of whether the exclusionary rule should apply comes down to whether the officer's misconduct can and should be effectively deterred. "[T]he exclusionary rule should not automatically apply every time a Fourth Amendment violation is found; rather, it should apply only in those circumstances where its remedial objectives are actually served by suppression." *People v. Gutierrez*, 222 P.3d 925, 941 (Colo. 2009). "[T]he deterrence benefits of exclusion, and thus the [exclusionary] rule's application, depend on the culpability of the law enforcement conduct at issue." *Casillas v. People*, 2018 CO 78M, ¶ 34, 427 P.3d 804, 813. "Because the exclusionary rule 'serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence,' to warrant its application, law enforcement conduct must be 'sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *Id.* at ¶ 22, 427 P.3d at 810 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). Thus, the deterrence value of merely negligent conduct is not sufficient to warrant the cost of the exclusionary rule. *See Herring*, 555 U.S. at 147–48 ("[W]hen police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.'" (quoting *United States v. Leon*, 468 U.S. 897, 907 n.6 (1984))).

¶48    Therefore, even were I to accept the majority's conclusion that Trooper Wall's interpretation was objectively unreasonable, that conclusion does not warrant suppression here. Mere negligence is insufficient to invoke the exclusionary rule; and,

the majority does not identify anything about Trooper Wall's conduct that rose to the level of gross negligence, thus making it "sufficiently culpable" such that the exclusionary rule should apply.

¶49 Trooper Wall's interpretation of the statute is arguably a safer interpretation of the law. The question of whether lane changes are in fact "turns" is more nuanced than the majority gives it credit for, as evidenced by the Department of Revenue's own publication. Moreover, the federal district court in *Rubio-Sepulveda* found that the same interpretation, under similar circumstances, did not rise even to the level of ordinary negligence, let alone gross negligence.

## Conclusion

¶50 I believe that Trooper Wall's interpretation of the statute was correct. Even if his interpretation was incorrect, however, it was objectively reasonable. And even if his interpretation was objectively unreasonable, his conduct did not rise to the level of gross negligence that is required to apply the exclusionary rule. As such, I would reverse the trial court's suppression order. Accordingly, I respectfully dissent.

I am authorized to state that CHIEF JUSTICE COATS joins in this dissent.