**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RAMON VARGAS,

     Petitioner - Appellant,

v.

DEAN WILLIAMS, Executive
Director, Colorado Department of
Corrections; PHILIP J. WEISER,
Attorney General, State of
Colorado,

     Respondents - Appellees.

No. 19-1192
(D.C. No. 1:18-CV-00283-WJM-
KLM)
(D. Colo.)

_____

**ORDER DENYING A CERTIFICATE OF APPEALABILITY**[*]
_____

Before **BRISCOE**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

This matter arose from a shooting involving two groups of men. One group included the defendant, Mr. Ramon Vargas; the other group included the shooting victim, Mr. Norman Esquibel. Mr. Esquibel died from gunfire, and Mr. Vargas was convicted in state court of first-degree murder.

After unsuccessfully appealing in state court, Mr. Vargas brought a federal habeas action. The federal district court denied relief, and Mr.

---

[*] This order does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order may be cited for its persuasive value if otherwise appropriate. *See* Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

Vargas wants to appeal. To do so, however, he needs a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). We decline to issue a certificate of appealability, so we dismiss the matter.

1. **The State theorizes that Mr. Vargas shot into Mr. Esquibel's vehicle.**

The shooting arose from an evening at a club. Mr. Esquibel visited the club with his cousin. Mr. Vargas and two companions also visited the club, and the five men went into the parking lot. There, Mr. Esquibel and his cousin joined two acquaintances; and the four men departed in two vehicles.

Shortly after the seven men departed the parking lot, Mr. Esquibel was fatally shot. The State theorized that Mr. Vargas had been one of the shooters.

2. **The generous standard for a certificate of appealability is qualified by the rigorous burden for habeas relief.**

The standard for a certificate of appealability is ordinarily generous, requiring only a reasonably debatable appeal point. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). But we apply this generous standard against the backdrop of the petitioner's rigorous burden for habeas relief. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (stating that when deciding whether to grant a certificate of appealability, the court "look[s] to the District Court's application of [The Antiterrorism and Effective Death Penalty Act]

2

to petitioner's constitutional claims"). This burden requires the petitioner to show that the state appellate court's decision was

- contrary to, or involved an unreasonable application of, clearly established federal law or

- based on an unreasonable factual determination.

28 U.S.C. § 2254(d)(1)–(2).

**3. A certificate of appealability is unwarranted on Mr. Vargas's argument involving erroneous admission of evidence.**

The first issue involves evidence of arson. The car that Mr. Vargas occupied was engulfed in a fire eight days after the shooting. At trial, the prosecutors presented evidence of the fire, attributing it to arson and arguing to the jury that the arson showed Mr. Vargas's guilty knowledge.

Mr. Vargas points out that he could not have set the fire because he was incarcerated at the time. So Mr. Vargas argues that the evidence was irrelevant. But the state appellate court's decision to affirm was reasonable based on Mr. Vargas's argument and the trial evidence.

The state appellate court did not decide whether the evidence was relevant. The court instead decided that if the evidentiary ruling had been erroneous, the error would have been harmless because it did not affect Mr. Vargas's substantial rights under Colorado Rule of Criminal Procedure 52(a).

Mr. Vargas argues that this determination contradicted or unreasonably applied federal law because the State had needed to show that

3

the error was harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18, 24 (1967). But we must "review the reasonableness of [the] state court's decision in light of the arguments the petitioner raised in the state court." *Wellmon v. Colo. Dep't of Corr.*, 952 F.3d 1242, 1249 (10th Cir. 2020).

In the state appellate court, Mr. Vargas did not cite *Chapman* or suggest that the State needed to prove harmlessness beyond a reasonable doubt. Mr. Vargas instead relied on Colorado Rule of Criminal Procedure 52(a), describing the test to include

- whether the error had substantially influenced the verdict or affected the fairness of the trial proceedings,

- whether the error had affected the defendant's substantial rights, and

- whether the defendant had suffered prejudice from the error.

Despite this framing of the issue, Mr. Vargas argues that the state appellate court's analysis of harmlessness was contrary to, or an unreasonable application of, *Chapman*. But Colorado appellate courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *People v. Burnett*, 432 P.3d 617, 623 n.6 (Colo. 2019) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). And the state appellate court considered the argument that Mr. Vargas presented. That argument involved the harmlessness standard under Colorado state law, not the standard for

4

constitutional violations. By confining itself to Mr. Vargas's framing of the issue, the state appellate court's opinion was not contrary to, or an unreasonable application of, *Chapman*.

But even if the state appellate court had contradicted or unreasonably applied *Chapman*, Mr. Vargas would need to show that the arson evidence had substantially and injuriously influenced the verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (stating that "habeas petitioners . . . are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice'"). Mr. Vargas failed to make that showing.

If the district court were independently to determine whether the evidence had substantially and injuriously influenced the verdict, the court would need to consider the trial evidence. The state appellate court had characterized the trial evidence as "overwhelming" proof of guilt. R. vol. 2 at 236. When the evidence of guilt is overwhelming, the petitioner may be unable to show a substantial and injurious influence on the verdict. *Hoxsie v. Kerby*, 108 F.3d 1239, 1244–45 (10th Cir. 1997).

But Mr. Vargas argues that the state appellate court had unreasonably determined the facts when characterizing the State's evidence as overwhelming. In our view, this argument is not reasonably debatable.

According to Mr. Vargas, the state appellate court made a factual determination when characterizing the evidence as overwhelming. For the

5

sake of argument, we may assume that Mr. Vargas is correct. If so, he would need to show that the state appellate court's finding was unreasonable based on the trial evidence. 28 U.S.C. § 2254(d)(2).

The prosecution's evidence showed that Mr. Vargas had fired into Mr. Esquibel's vehicle. This evidence included three steps:

The first step put Mr. Vargas in the passenger seat of a vehicle that had stopped next to Mr. Esquibel's vehicle. The State's theory was that Mr. Vargas's companion, Mr. Ramon Lopez, owned the vehicle and was driving, with Mr. Vargas in the front passenger seat and Mr. Andres Segura in the back seat.

The State also theorized that

- Mr. Esquibel was driving his cousin (Mr. Ryan Esquibel) in one vehicle and

- their friend, Mr. Josh Biergans, was driving Mr. Esquibel's uncle (Mr. Mark Esquibel) in another vehicle.

According to the State, Mr. Biergans stopped his vehicle immediately behind Mr. Esquibel's when the three vehicles approached a stop sign.

The State presented compelling evidence to support this step in the prosecution. For example, a friend of both Mr. Lopez and Mr. Vargas (Ms. Jasmine Martinez) testified that

- Mr. Lopez and Mr. Vargas had arrived at the club in separate vehicles but had entered the club together and

- they had left together in a red Navigator.

7

Mr. Lopez's supervisor at work testified that the red Navigator was Mr. Lopez's.

The second step put Mr. Vargas in the front passenger seat of the red Navigator. The victim's cousin, Mr. Ryan Esquibel, testified that

- the men in the front seats had worn yellowish green shirts and

- he had recognized the two men from seeing them in the club.

The supervisor for Mr. Lopez and Mr. Vargas also testified that they had been wearing light green shirts earlier in the day while at work.

The third step involved identification of Mr. Vargas as one of the shooters. Three eyewitnesses identified Mr. Vargas as one of the shooters.

One of these eyewitnesses was the victim's cousin (Mr. Ryan Esquibel), who testified that he had seen the man in the passenger seat fire the gun.

Mr. Biergans was also an eyewitness. He had accompanied Mr. Norman Esquibel and his cousin at the club. Mr. Biergans was driving a silver Charger, stopped behind Norman Esquibel's red Explorer. Mr. Biergans testified that he'd seen the gun outside the red Navigator's passenger window, adding that he was only about four feet away.

Lastly, Mr. Andres Segura testified that he was in the back seat of the red Navigator and saw Mr. Vargas fire the gun.



Mr. Vargas argues that Mr. Segura lacked credibility because he had a substantial incentive to testify favorably to the State. But much of Mr. Segura's testimony was corroborated. For example, the State presented ample other evidence that Mr. Vargas had occupied the passenger seat of Mr. Lopez's vehicle, the victim's cousin testified that he had seen the

9

passenger in the yellowish green shirt fire the gun, and the driver of the silver Charger testified that he had seen the passenger point the gun out of the window from only about four feet away. Even without the corroboration, however, we cannot discount the possibility that a reasonable factfinder could justifiably credit Mr. Segura's testimony. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (stating that "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

Mr. Vargas argues that the state appellate court failed to discount Mr. Segura's testimony, unreasonably applying

- *Banks v. Dretke*, 540 U.S. 668 (2004) and

- *On Lee v. United States*, 343 U.S. 747 (1952).

The federal district court could regard application of these opinions as unreasonable only if every fairminded jurist would conclude that the state court had erred. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Though the test for a certificate of appealability is not demanding, the test for unreasonable application of Supreme Court opinions is rigorous, *see Richter*, 562 U.S. at 102, and no reasonable jurist could find satisfaction of this rigorous test. *Banks* and *On Lee* involved suppression of evidence and the scope of cross-examination. For example, in *Banks*, the Supreme Court concluded that the petitioner had been prejudiced by the

10

suppression of evidence that the government had paid an informant. *Banks*, 540 U.S. at 698–99. And in *On Lee*, the Supreme Court concluded that defendants are entitled to broad latitude in cross-examining informants about their credibility. *On Lee*, 343 U.S. at 757–58.

Mr. Vargas isn't challenging the suppression of evidence or restrictions on his counsel's cross-examination of the eyewitness. Indeed, Mr. Vargas didn't even cite *Banks* or *On Lee* in the state-court appeal. So no jurist could reasonably find satisfaction of the rigorous test for unreasonable application of *Banks* or *On Lee*.

\* \* \*

Given the testimony of two eyewitnesses, any reasonable jurist would conclude that a factfinder could justifiably characterize the State's evidence as overwhelming proof of guilt. So Mr. Vargas is not entitled to a certificate of appealability on this issue.

4. **A certificate of appealability is unwarranted on Mr. Vargas's argument involving prosecutorial misconduct.**

Mr. Vargas also argues that the prosecutors committed misconduct by

- referring to gang violence in Denver as escalating and terrorizing to the community and

- referring to the evidence of arson as powerful, overwhelming evidence of guilt, implying that Mr. Vargas and a companion had intentionally set the fire.

Because Mr. Vargas did not object at trial, he conceded in his state-court appeal that the standard of review was plain error. Applying this standard,

11

the state appellate court found no plain error. The court regarded the comment about gang violence as inappropriate, but concluded that the comment had not rendered the trial unfair or cast doubt on the verdict. The court similarly concluded that the arson evidence had not rendered the trial unfair or cast doubt on the verdict, pointing again to the overwhelming evidence of guilt.

The constitutional test is whether the prosecutors' statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam). The test is "very general," rendering habeas review particularly deferential to the state appellate court. *Id.*

Mr. Vargas argues that the state appellate court unreasonably failed to consider

- the cumulative impact of the prosecutors' comments and

- their sole function of arousing that these comments had served only to arouse passion and prejudice.

These arguments are not reasonably debatable.

As noted above, we consider the reasonableness of the state appellate decision in light of the arguments that Mr. Vargas had made to that court. *See* Part I, above. But in the state-court appeal, Mr. Vargas never argued that the court should consider the prosecutors' comments cumulatively.

12

Even if Mr. Vargas had made this argument in the state-court appeal, the argument would have lacked merit. The Supreme Court has condemned "pronounced and persistent" misconduct, such as repeated misstatement of facts, assumption of facts not in evidence, mischaracterization of testimony, badgering of witnesses, and implication that incriminating statements had been made out of court to the prosecutors themselves. *Berger v. United States*, 295 U.S. 78, 84, 89 (1935).

Mr. Vargas has pointed to only two statements, and the State's evidence of guilt was overwhelming.[1] A federal court could not possibly regard the state appellate court's determination as an unreasonable application of federal law.

The same is true of Mr. Vargas's argument that the prosecutors' comments had been designed only to arouse passion and prejudice. For this argument, Mr. Vargas relies on *Viereck v. United States*, 318 U.S. 236, 247 (1943). The federal district court rejected this argument, reasoning that

- Mr. Vargas had relied on dicta and

- the comments here were far less problematic than the statements in *Viereck*.

---

[1] Mr. Vargas again challenges the reasonableness of the state appellate court's characterization of the evidence as "overwhelming," but we have rejected that challenge.

Mr. Vargas has not identified any error in the district court's analysis, and we cannot make an argument for him. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

**5.     We dismiss the matter.**

Because Mr. Vargas's appellate arguments are not reasonably debatable, we decline to issue a certificate of appealability. Given the absence of a certificate, we dismiss the matter.

Entered for the Court


Robert E. Bacharach
Circuit Judge

14