517 P.3d 66
The PEOPLE of the State of Colorado, Plaintiff-Appellant,
v.Isaiah Sylvester DEANER, Defendant-Appellee.
Supreme Court Case No. 22SA72 Supreme Court of Colorado.
September 26, 2022
Attorneys for Plaintiff-Appellant: Daniel P. Rubinstein, District Attorney, Twenty-First Judicial District, Tearsa Storms Olson, Senior Deputy District Attorney, Grand Junction, Colorado
Attorneys for Defendant-Appellee: Megan A. Ring, Public Defender, Ruth M. Swift, Deputy Public Defender, Grand Junction, Colorado
En Banc
CHIEF JUSTICE BOATRIGHT delivered the Opinion of the Court, in which JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER joined.
CHIEF JUSTICE BOATRIGHT delivered the Opinion of the Court. ¶1 In this interlocutory appeal of a suppression order, we consider whether a police officer had reasonable suspicion to conduct a traffic stop. We hold that, under the totality of the circumstances here, the officer lacked such reasonable suspicion. We therefore affirm the trial court's order suppressing the evidence obtained from the search, and we remand for further proceedings consistent with this opinion.
I. Facts and Procedural History
¶2 Eduardo Barrera was driving a Jeep SUV eastbound on I-70 with Isaiah Deaner in the passenger's seat. Trooper Bollen, an officer patrolling the highway, saw the SUV pass by and noted that it was an apparent rental vehicle with Arizona plates. Trooper Bollen testified that he was suspicious because I-70 is a major drug corridor where traffickers frequently use rental vehicles to smuggle contraband, bulk narcotics, people, weapons, and cash. He further testified that he specifically noticed the Arizona plates because Arizona borders Mexico, a main source of bulk narcotics in this part of the country.1 ¶3 Based on these factors, Trooper Bollen decided to follow the SUV.2 The SUV was traveling in the right lane, and the patrol car followed slightly behind in the left lane. The road ahead was clear and straight. Trooper Bollen kept the front of his patrol car in line with the SUV's back axle, driving about seventy-four miles per hour (mph) in a seventy-five mph zone. Up ahead, an emergency vehicle was stopped on the right shoulder of the interstate with its emergency lights on, assisting a truck and trailer. As the SUV and the patrol car approached the stationary emergency vehicle, Trooper Bollen applied his brakes twice and slowed his patrol car to about sixty-two mph, falling behind the SUV. The SUV then activated its left turn signal to indicate its intent to move into the left lane in front of the patrol car. After signaling, the SUV moved into the left lane and traveled in front of the patrol car. The SUV was less than three seconds3 ahead of the patrol car at that point but quickly expanded to create a four-second gap. Trooper Bollen did not apply his brakes again as the SUV moved into the lane in front of him, and the patrol car continued to travel between sixty and sixty-four mph until both vehicles passed the stationary emergency vehicle. Then, Trooper Bollen accelerated to eighty mph before catching up to the SUV and turning on his emergency lights to initiate a traffic stop.
¶4 Once both vehicles stopped, Trooper Bollen told Barrera that he pulled him over because Barrera needed to leave "more space" and had "cut [him] off" but that it was "not a big deal." Trooper Bollen then asked Barrera various questions about where he was going, why he was traveling, who his passenger (Deaner) was, and the purpose of the trip. At the same time, a second officer spoke with Deaner and asked similar questions. Because the two men were traveling from Phoenix to Denver (a route Trooper Bollen believed to be a known drug corridor) and did not give matching answers, Trooper Bollen determined that he had probable cause to search the SUV. Trooper Bollen found a significant amount of illegal drugs in the SUV and arrested both men.
¶5 The People charged both Deaner and Barrera with possession of a controlled substance with intent to distribute. Deaner argued that Trooper Bollen violated his constitutional rights because Trooper Bollen did not have reasonable suspicion to conduct the traffic stop. Therefore, Deaner filed a motion to suppress the evidence from the traffic stop. In the companion case, People v. Barrera , 2022 CO 44, 517 P.3d 61, also decided today, Barrera then filed a motion to adopt the ruling made in Deaner's case. The trial court granted both motions.
¶6 At the motions hearing, Trooper Bollen testified that he believed that Barrera made an unsafe lane change. Relying on the Colorado Driver's Handbook, Trooper Bollen stated that Barrera failed to leave enough room between the cars when changing lanes. Pursuant to the Handbook's "three-second rule," a driver should follow another vehicle at a distance of at least three seconds. According to Trooper Bollen, Barrera made an unsafe lane change because there was less than a three-second gap between the SUV and the patrol car when the SUV moved into the left lane.
¶7 The trial court granted the motion to suppress, finding that the prosecution had not shown that Barrera performed an unsafe lane change. To the contrary, the court found that Barrera turned on the SUV's blinker, waited until Trooper Bollen's patrol car slowed down enough to safely change lanes, and then made the lane change in front of Trooper Bollen's patrol car. Accordingly, the court suppressed all evidence obtained from the search of the SUV.
¶8 The People then filed this interlocutory appeal.
II. Jurisdiction and Standards of Review
¶9 Pursuant to C.A.R. 4.1 and section 16-12-102(2), C.R.S. (2022), the People may bring an interlocutory appeal under these circumstances. The People certified that they are not appealing for purpose of delay and that the suppressed evidence is a substantial part of the proof of the charges pending against Deaner. ¶10 "A trial court's suppression order presents a mixed question of law and fact." People v. McIntyre, 2014 CO 39, ¶ 13, 325 P.3d 583, 586. We defer to the trial court's findings of historical fact if they are supported by competent evidence. Id., 325 P.3d at 587. However, we review the legal effect of those facts de novo. Id.
III. Analysis
¶11 We first discuss the relevant legal principles governing reasonable suspicion. We then apply those principles to the facts of this case and conclude that, under the totality of the circumstances here, Trooper Bollen did not have a reasonable suspicion to conduct the traffic stop. We therefore affirm the trial court's order suppressing evidence obtained from the search.
A. Reasonable Suspicion Standard ¶12 The United States Constitution and the Colorado Constitution both protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV ; Colo. Const. art. II, § 7. This applies to traffic stops. People v. Chavez-Barragan, 2016 CO 16, ¶ 10, 365 P.3d 981, 983. Still, a police officer may conduct a brief investigatory stop without violating an individual's constitutional rights so long as the officer can articulate a reasonable suspicion that criminal activity has occurred, is occurring, or is about to occur. People v. Brown , 2019 CO 63, ¶ 10, 461 P.3d 1, 3 ; Chavez-Barragan, ¶ 10, 365 P.3d at 983 ; see also Terry v. Ohio, 392 U.S. 1, 27, 30-31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (concluding that a stop is legal if the officer has a reasonable suspicion of criminal activity, the purpose of the stop is reasonable, and the scope and character of the detention is reasonable considering the purpose). Therefore, an officer may stop a vehicle if the officer has reasonable suspicion that the driver has committed a traffic violation. People v. Burnett, 2019 CO 2, ¶ 14, 432 P.3d 617, 621. ¶13 The reasonable suspicion standard requires that a police officer's notion of criminal activity must be "more than a mere generalized suspicion or hunch." People v. Wheeler, 2020 CO 65, ¶ 13, 465 P.3d 47, 52. Rather, they must have "an articulable and specific basis in fact" for suspecting the criminal activity. People v. Arias, 159 P.3d 134, 138 (Colo. 2007) (quoting People v. Smith, 13 P.3d 300, 306 (Colo. 2000) ). In conducting this objective inquiry, we consider the totality of the circumstances, including all facts known to the officer immediately prior to the stop. Id.
B. Application ¶14 The question we are asked to answer is whether the officer had reasonable suspicion that the driver committed a crime because he made an unsafe lane change. For the reasons we discuss in detail in Barrera, ¶¶ 11-22, also announced today, based on the facts and circumstances known to Trooper Bollen immediately prior to the stop, Trooper Bollen did not have an objectively reasonable belief that Barrera committed a traffic violation. Therefore, Trooper Bollen did not have a reasonable suspicion to conduct the traffic stop. It follows that any search that followed the traffic stop was unlawful. We thus affirm the trial court's order suppressing the evidence.
IV. Conclusion
¶15 For the foregoing reasons, we affirm the trial court's order suppressing the evidence obtained from the search and remand for further proceedings consistent with this opinion.
1 The only issue before us is whether the Trooper had reasonable suspicion to stop the SUV for an unsafe lane change.
2 We derive the following observations from our review of the patrol car's dash camera footage, which shows the view of the road ahead, the patrol car's speed, when the brakes were applied, and when the emergency lights were activated. See People v. Madrid, 179 P.3d 1010, 1014 (Colo. 2008) (noting that where there is an audiovisual record and there are no disputed facts outside the recording controlling the issue of suppression, this court sits in a similar position as the trial court and therefore may independently review the recording).
3 After reviewing the dash camera footage, we determine that the SUV traveled between one and one-half to two seconds in front of the patrol car immediately after the lane change. For the purposes of this opinion, we refer to the gap as less than three seconds.